In re The **LADY H COAL COMPANY, INC.**, Consolidated Sewell, Inc., Sewell Coal Co., Leivasy Mining Corporation, Eastwood Construction, Inc., Debtors in Possession.

Bankruptcy Nos. 94–20449, 94–20766, 94–20765, 94–20767 and 94–20710.

United States Bankruptcy Court, S.D. West Virginia.

Feb. 28, 1996.

John A. Rollins, Brian Hopkins, Lewis, Friedberg, Glasser, Casey & Rollins, Charleston, WV, for Debtors in Possession.

Robert Weinberger, Charleston, WV, for U.S. Trustee.

Gary L. Call, Office of the U.S. Attorney, Charleston, WV, for IRS.

Paul A. Ades, National Labor Relations Board, Washington, DC, and Donald A. Becher, Region 9, NLRB, Cincinnati, OH, for National Labor Relations Board.

Douglas A. Kilmer, Charleston, WV, for WV State Department of Tax and Revenue.

Richard Stephenson, Charleston, WV, for Bureau of Employment Programs, West Virginia Workers' Compensation Division, and West Virginia Unemployment Compensation Division.

Raymond G. Dodson, Dodson, Riccardi & Lutz, Charleston, WV, for Official Committee of Unsecured Creditors.

Barbara Evans Fleischauer, Nancy S. Grossman, Barbara Evans Fleischauer & Associates, Morgantown, WV, for UMWA Local Unions 8190 and 1352 and Frankie B. McCutcheon et al.

Michael F. Niggemyer, Charleston, WV, for UMWA District 17.

Warren Randolph McGraw II, Beckley, WV, for UMWA District 29.

Susan Cannon–Ryan, Caldwell, Cannon–Ryan & Riffee, Charleston, WV, Barbara E. Locklin–George, Christopher F. Clarke, Washington, DC, and Marilyn L. Baker, Beins, Axelrod, Osborne, Mooney & Green, P.C., and Katharine B. Houlihan, Morgan, Lewis & Bockius, LLP, Washington, DC, for UMWA Health and Retirement Funds.

Molly Kettler Wade, Hostler & Donnelly, L.C., Charleston, WV, for International Union UMWA.

Arthur M. Standish, Michael J. Funk, Steptoe & Johnson, Charleston, WV, for United Coal Company.

Jack Alsop, Webster Springs, WV, for Estate of Joseph W. Post.

W. Bradley Sorrells, Robinson & McElwee, Charleston, WV, for A.T. Massey, White Buck Coal Company, and Green Valley Coal Company.

J. Nicholas Barth, Stephen L. Thompson, Barth, Thompson & George, Charleston, WV, for Chickopee Coal Company.

William F. Dobbs, Ellen S. Cappellanti, Jackson & Kelly, Charleston, WV, for Westvaco Corporation, Meadow River Coal Corporation, Caterpillar Financial Services Corporation, Westmoreland Coal Company, and Leckie Smokeless Coal Company.

Thomas H. Vanderford, IV, Pauley, Curry, Sturgeon & Vanderford, Charleston, WV, John J. Nesius, Spilman, Thomas & Battle, Charleston, WV, for Orix Credit Alliance, Inc.

Thomas H. Gilpin, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, WV, for New Gauley Coal Corporation, Clarendon National Insurance, and Van–American Insurance Company.

Julia A. Chincheck, Bowles, Rice, McDavid, Graff & Love, Charleston, WV, for AMCI Coal Sales, Inc. and Aloe Mining Corporation.

R. Terrance Rodgers, King, Allen and Arnold, Charleston, WV, for Simmons–Rand Company.

Deborah D. Skeens, Charleston, WV, for Carroll International Corporation.

## MEMORANDUM OPINION AND ORDER DENYING THE DEBTORS' MOTION TO REJECT UMWA AGREEMENT, GRANTING THE DEBTORS' MOTION TO SELL SUBSTANTIALLY ALL ITS ASSETS SUBJECT TO THE RIGHT OF ITS UMWA EMPLOYEES TO FILE CLAIMS FOR POST PETITION BREACH OF CONTRACT, GRANTING THE DEBTORS' REQUEST THAT SUCH SALE BE FREE AND CLEAR OF ANY INTERESTS WITH CLAIMS AND INTERESTS ATTACHING TO THE PROCEEDS FROM SALE, AND DENYING THE DEBTORS' REQUEST FOR INJUNCTIVE RELIEF

RONALD G. PEARSON, Bankruptcy Judge.

### INTRODUCTION

The Court has under consideration the Debtors' Second Amended Motion for Au-

thority to Sell Property Free and Clear of all Liens and Encumbrances, for Approval of Assignments of Leases and Executory Contracts, and for Related Section 1113 and Injunctive Relief ("the Debtors' Motion"). These cases present difficult choices which must be balanced by the Court involving economic, tangible and emotional interests of important parties to the case. The Court believes this Order represents the best combination of rights and remedies that can be tailored considering the issues presented and the limited choices that are available as a result of the Debtors' precarious financial position which has turned even worse during consideration of the Debtors' Motion.

This proceeding as it relates to the Debtors' proposed rejection of the collective bargaining agreement, sale free and clear of any interest, and request for injunctive relief are core proceedings as provided in 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(b)(2)(A) and (N) and clearly within the jurisdictional grant to this Court. The Court is of the opinion that the Debtors failed to comply with the substantive requirements of § 1113 of the Bankruptcy Code and therefore, the Court shall not reject the collective bargaining agreement. However, such a finding does not prevent the Court from authorizing the proposed sale of substantially all of the Debtors' assets free and clear of any interest pursuant to 11 U.S.C. § 363 as such a sale is the only means by which funds are likely to become available to pay employee medical claims, unpaid post-petition wages and the claims of numerous secured and other creditors.

The Court need not make recommended findings of fact or conclusions of law to the District Court as to objections raising successor liability based on other bodies of federal law and such objections are deemed not ripe for adjudication. Although the Court believes a sale is authorized pursuant to 11 U.S.C. § 363, the Court shall not authorize injunctive relief, but reserves jurisdiction to resolve any disputes over claims relating to the property to be sold, claims against the sale proceeds or other issues related to the sale, some of which may require recom-

mended findings of fact and conclusions of law.

## PROCEDURAL HISTORY

On December 27, 1995, the Debtors filed a Motion for Authority to Sell Property Free and Clear of Liens and Encumbrances, for Approval of Assignments of Leases and Executory Contracts and for Other Relief which requested an expedited hearing. The Debtors entered into a letter of intent with A.T. Massey Company, Inc. ("Massey") to sell the majority of the Debtors' assets to Massey or one or more its subsidiaries. At a hearing conducted on December 28, 1995, counsel for UMWA Health & Retirement Funds objected to the granting of the Motion for Expedited Hearing. After deliberation with the parties, the Court set the hearing on the Debtor's Motion for Authority to Sell Property on January 17, 1996, which provided twenty (20) days notice, complying with Bankruptcy Rules 6004 and 2002. By Order entered January 12, 1996 on the Debtors' Motion to Convert Sale Motion to Adversary Proceeding, the Court found that the Debtors' Motion is a contested matter pursuant to Bankruptcy Rule 9014 and further found that Bankruptcy Rule 7065 may apply as it relates to the Debtors' request for injunctive relief.

The UMWA 1992 Benefit Plan sought by motion to withdraw reference of this matter to the District Court for the Southern District of West Virginia. A hearing on such withdrawal motion was conducted on January 10, 1996 and by Order entered on January 11, 1996, the District Court denied the same but found that issues pertaining to the Coal Act were non-core related to proceedings pursuant to 28 U.S.C. § 157(c) requiring the Bankruptcy Court to submit recommended findings of fact and conclusions of law.

Likewise, by Order entered January 25, 1996, this Court found that jurisdictional issues raised in the objection filed by the National Labors Relation Board ("NLRB") to be non-core related to proceedings pursuant to 28 U.S.C. § 1334(a), under which this Court would make recommended findings of fact and conclusions of law to the United States District Court for the Southern Dis-

trict of West Virginia. The NLRB objects to the injunctive relief as requested by the Debtors but not to the proposed sale. The NLRB asserts that the jurisdictional grant to the District Court of all property of the debtor and property of the estate pursuant to 28 U.S.C. § 1334(e) is superseded by jurisdiction given the NLRB over alleged successor liability issues in connection to the sale of much of the Debtors' property under 11 U.S.C. § 363. The NLRB basically asserts that since it has exclusive jurisdiction over the determination of unfair labor practices it also has exclusive jurisdiction over the successor liability claims.

Objections to the Debtors' Motion, which were timely filed or accepted as late objections, include: Trustees of the UMWA 1992 Benefit Plan ("1992 Plan"), Trustees of the UMWA 1974 Pension Trust and UMWA Cash Deferred Savings Plan of 1988, Trustees of the UMWA 1993 Benefit Plan (collectively "UMWA Funds"), UMWA International ("UMWA"), Locals 8190 and 1352 and Frankie McCutcheon et al. ("Former Sewell Employees"), District 29 of the UMWA ("District 29"), New Gauley Coal Corporation ("New Gauley"), Genesis, Inc. ("Genesis"), Clarendon National Insurance Company ("Clarendon") and Van–American Insurance Company ("Van–American"), jointly, Orix Credit Alliance, Inc. ("Orix"), Simmons–Rand Company ("Simmons–Rand"), AMCI Coal Sales, Inc. ("AMCI"), Aloe Mining Corporation ("Aloe"), Leckie Smokeless Coal Company ("Leckie"), Westmoreland Coal Company ("Westmoreland"), Westvaco Corporation ("Westvaco"), NLRB and Caterpillar Financial Services Corporation ("Caterpillar").

Aloe's motion to continue the hearing was on the grounds that it was not provided ample opportunity nor sufficient information to submit an upset bid, but at the hearing conducted on January 18, 1996 Aloe withdrew its objection and motion to continue. For reasons set forth in the Order entered January 16, 1996, the objections of Simmons–Rand, Genesis, and Orix were overruled and the objection of District 29 was sustained.

As to the remainder of the objections, it appears that the objections of Westmoreland, AMCI, Westvaco, Leckie, Clarendon, New Gauley and Caterpillar are protective in nature rather than raising substantive issues of law and the Debtors will be given time to negotiate and advance an Order or Orders that protect the interest these creditors have in sale proceeds as required by § 363(f)(3) and § 365 of the Bankruptcy Code. The objections which have raised substantive issues of law include: UMWA, the 1992 Plan, UMWA Funds, NLRB and Former Sewell Employees.

Prior to the hearing initiated on January 17, 1996, the Court was presented with an alternative bid by Chicopee Coal Company ("Chicopee") which was styled as "Alternative Purchase Offer of Chicopee Coal Company to the Motion of the Debtors for Authority to Sell." The consideration offered by Chicopee was to indefinite to be considered an upset bid but it was in the nature of a proposed plan of reorganization. Accordingly, Chicopee and creditors were provided an opportunity to structure and file a plan of reorganization by February 5, 1996, which deadline has been informally extended through the present date. To date, no creditor has filed a plan of reorganization or noticed intention to file a plan, incorporating the Chicopee proposal or otherwise.

By Order entered January 26, 1996 and based upon a status conference with counsel for all parties held on January 18, 1996, the Court found that the Debtors' Motion contemplates the sale of "operations" as the term is used in Article I of the National Bituminous Coal Wage Agreement of 1993 ("NBCWA"), and therefore, the purchaser must consent to assume the NBCWA or the Debtors must otherwise modify or reject the collective bargaining agreement pursuant to 11 U.S.C. § 1113.[1] This section of the Bankruptcy Code requires the Debtors to conduct good faith negotiations with its bargaining representative to modify a collective bargaining agreement if the reorganization or rehabilitation of a debtor is dependent on such

---

1. The Order simply required the Debtors' to comply with Article I the NBCWA or reject the agreement pursuant to § 1113 but did not preclude remedies such as allowing the sale subject to a damage claim of the UMWA Employees.

modification, or request the Court to authorize rejection of said agreement. The Court observed that in the absence of the purchaser's assumption of the NBCWA the requirements of 11 U.S.C. § 1113 are mandatory as the sale of substantially all of the Debtors' assets constitutes a constructive reorganization of the Debtors.

On January 23, 1996, the Debtors filed a Second Amended Motion and Notice for Authority to Sell Property Free and Clear of All Liens and Encumbrances, for Approval of Assignments of Leases and Executory Contracts and For Related Section 1113 and Injunctive Relief. Further, a Motion to Alter and Amend the January 26, 1996 Order was filed by the Debtors on January 29, 1996 with subsequent objections filed by the UMWA and Chicopee. The Court finds that the January 26, 1996 Order was interlocutory in nature and therefore, the Court has not ruled on the Debtors' motion or respective objections, but has considered such motion and objections within this Memorandum Opinion.

This Court conducted evidentiary hearings on January 17–18, 1996 and February 5, 1996 to consider the Debtors' Motion and respective objections, in addition to a hearing on February 2, 1996 to consider the jurisdictional objection of the NLRB. Prior to the final hearing, the Debtors filed a proposed plan of reorganization which provided payment in full of secured claims.

The Court conducted a negotiation session on February 8, 1996 to attempt a negotiated resolution of the major legal issues within the case. The primary parties involved in such negotiations included the Debtors, UMWA, UMWA Funds and Massey. Such negotiations did not result in any resolution. Final arguments and responses to the Debtors' Motion were required to be filed by February 12, 1996 in writing with appropriate citation to legal authority, with any response due on February 13, 1996.

A final status conference was conducted by the Court on February 15, 1996 between counsel for the Debtors, Massey and the UMWA in order to attempt to reach a negotiated settlement between these parties. During the status conference, the Debtors informed the Court that operations had been idled and that the companies were unable to make payroll due on February 15, 1996. Subsequent to the conference, Massey submitted a stipulation to employ a minimum of 25% existing employees of the Debtors and an offer to cover $100,000 of unpaid wages. The Court was informed by counsel for the UMWA that such proposal was rejected.

On February 21, 1996, an expedited hearing to consider the Debtors' Motion for Authority to Treat Utility Service as Administrative Expense with Super–Priority Standing was conducted in order to allow the Debtors to continue to receive electric power. The Debtors and Appalachian Power Company were able to reach a negotiated settlement which permitted continued power to the mines for a short time.

## FINDINGS OF FACT

The Debtors in this procedurally consolidated case include Consolidated Sewell, Inc. ("Consolidated"), parent corporation of Lady H Coal Company ("Lady H") and Sewell Coal Co. ("Sewell"), and Lady H's two subsidiaries, Leivasy Mining Corporation ("Leivasy") and Eastwood Construction, Inc. ("Eastwood"). The Estate of Mr. Post, Clyde See and John Leaberry equally own one-third (⅓rd) of the parent corporation, Consolidated. Petitions for relief under Chapter 11 of the Bankruptcy Code were filed on:

| | |
|---|---|
| Lady H: | July 20, 1994 |
| Eastwood: | November 7, 1994 |
| Leivasy: | December 2, 1994 |
| Consolidated and Sewell: | December 22, 1994 |

The Debtors are involved in coal mining operations primarily in Nicholas, County, West Virginia, employing approximately 220 employees, including approximately 180 employees covered by the NBCWA. Although the other remaining 40 employees have not raised an objection to the Debtors' Motion, they face similar uncertainties as the Union employees on a sale to a new party.

According to the monthly operating reports filed with the Court, the Debtors' post-petition losses are substantial, with $8.6 million in losses for the fiscal year ended June 30, 1995 on sales of $21.8 million and $2.1 million in losses for the four months ended

October 31, 1995 on sales of $7.7 million. The Court finds that the financial circumstances of the Debtors were dire at the time the Debtors' Motion was filed. The Debtors had long since gone beyond the point of being able to meet necessary daily expenses. Operating funds needed to eliminate bottlenecks in shipments and production at the cleaning plant and the loadout site were unavailable and the financial emergencies that the Debtors faced on a daily basis were so substantial that existing management had little time to focus on anything but such emergencies. Since the filing of the Debtors' Motion, the Debtors have lost the ability to fund continuing operations and have ceased all active coal production, and the mines are in danger of having power terminated.

The operating and financial difficulties of the Debtors are in some part attributable to the illness and ultimate death of the Chief Executive Officer, William Post. However, the most serious problems that created negative cash flow in this business were the high costs and low production of coal. The Debtors do not have the needed management, money or time to correct the present operating problems.

The Debtors seek to sell a substantial portion of their assets and assign leases of mineral reserves and other executory contracts to Massey under terms and conditions detailed in the Debtors' Motion and Letter of Intent as executed by Massey, Consolidated, Sewell and Lady H. The agreement between the Debtors and Massey was negotiated by broker, David Callaghan, who was engaged by the late Chief Executive Officer of Lady H, William Post. Mr. Callaghan's engagement as a professional broker in the case was not noticed to creditors and did not receive court approval at any time, pursuant to the provisions of 11 U.S.C. § 327. However, from the testimony of Mr. Callaghan, it is clear that Mr. Callaghan sought to interest other potential purchasers to no avail, including certain NBCWA signatory operators, Pittston and Consolidated Coal.

The Court finds that little effort was made by the Debtors' officers or broker prior to filing this motion to explore the possibility of Massey or any other purchaser agreeing to assume the Debtors' collective bargaining agreement or enter into a collective bargaining agreement with the bargaining representative for employees, and that such was not consistent with the requirements of Article I of the NBCWA. The sales agreement negotiated by the Debtors with Massey require the Debtors to terminate its mining operations and deliver an idle operation to the purchaser. The recent shutdown of the Debtors' operations is a result of operating and cash flow problems and the Court does not believe the Debtors' shutdown was contrived by the Debtors and Massey in order to enhance the possibility of the potential sale.

The proposal to purchase substantially all the Debtors' assets would bring substantial value to creditors in this case, especially the secured, landlord, and employee creditors. If power to the mines is cut off and mines flood or other damage occurs, the Court believes the value of the Debtors' property would greatly diminish. Further, the Debtors have coal contracts of some value which will diminish over a short period of time. Despite the assertions of the UMWA, the Court finds that no party has offered evidence that the value of the sale to the bankruptcy estates is not fair and reasonable nor has anyone raised any serious question with respect to the alternatives available to the Debtors to continue its operations. In fact, Austin Caperton testified and provided a "fairness opinion" as to the reasonableness of Massey's offer based upon review of certain records and financial information of the Debtors including coal reserve and cash flow estimates of the properties if operating problems were resolved. Mr. Caperton's view as to the limited value of the Debtors' preparation plant and mining equipment was based on equipment downtime reports and reports as to the production problems at the preparation plant. The Court finds that such observations are credible and consistent with testimony of other professionals and the assertions of secured creditors throughout the duration of these cases. Even though Mr. Caperton worked for Massey several years ago, the Court believes his testimony is credible as it relates to the fairness of the $7,000,000 offer.

The total value to be received by the bankruptcy estates could be as much as $7,000,000 plus the assumption of major environmental liabilities. The purchase price consists of $3,500,000 to be paid upon closing and the remaining $3,500,00, subject to offsets, to be paid over twenty-four equal monthly installments with interest on the outstanding balance at five and one-half percent (5½%) per annum. Prior to filing the motion to sell, an agreement of continued employment for the two remaining officers of the Debtors in the form of one year consulting agreements with Massey was negotiated in the amount of $150,000 for each officer. In addition, the Estate of William Post is selling land to Massey in conjunction with this transaction, but the testimony of Mr. Callaghan revealed that Mr. Post's estate is only receiving an amount equal to what Mr. Post paid for the property.

## CONCLUSIONS OF LAW

**A. Debtors' Request for Rejection of Collective Bargaining Agreement is Denied as the Debtors have Failed to Meet the Substantive Requirements of § 1113 of the Bankruptcy Code.**

 The provisions of 11 U.S.C. § 1113 require a debtor in possession to honor the terms of collective bargaining agreements and provides a process for courts to approve modification or rejection of those agreements if said modification or rejection is necessary to preserve the reorganizing opportunities of debtors. By previous Memorandum Opinion and Order, this Court found that a collective bargaining agreement ("CBA") may be rejected in contemplation of the sale of a substantial portion of a debtor's assets as such sale is effectively the reorganization plan of a debtor. *See In re Maxwell Newspapers, Inc.*, 146 B.R. 920 (Bankr.S.D.N.Y.), *aff'd in part and rev'd in part*, 149 B.R. 334 (S.D.N.Y.), *aff'd in part and rev'd in part*, 981 F.2d 85 (2d Cir.1992).

The present relief sought by the Debtors' Motion to reject the CBA seeks Court authority to permit the Debtor to close the sale negotiated with Massey and save it from the consequences of a potential breach of its existing contract with the UMWA. Further, the present motion to reject the CBA lacks certain substantive requirements which are a predicate for the Court to grant a rejection of a CBA. The Bankruptcy Code in § 1113(b) provides:

(1) Subsequent to filing a petition and prior to filing an application seeking rejection of a collective bargaining agreement, the debtor in possession ... shall—

(A) make a proposal to the authorized representative of the employees covered by such agreement, based on the most complete and reliable information available at the time of such proposal, which provides for Those necessary modifications in the employees benefits and protections that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably; and

(B) provide ... the representative of the employees with such relevant information as is necessary to evaluate the proposal.

(2) During the period beginning on the date of the making of a proposal provided in paragraph (1) and ending on the date of the hearing provided for subsection (d)(1), the trustee shall meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications of such agreement.

██ In this case, after hearings conducted on January 17th and 18th, the Debtors filed its Second Amended Motion on January 22, 1996 which included a provision to reject the CBA. The evidence from the February 5, 1996 hearing revealed that the Debtors requested a modification of the CBA by letter to the UMWA International and District 29 on January 19, 1996 [Debtors' Exhibit No. 3]. Negotiations, including counter-proposals and a nine (9) hour meeting between the Debtors and Union, were conducted up until the hearing on February 5, 1996. The Court finds that the Debtors procedurally satisfied the requirements of 11 U.S.C. § 1113(b) by making proposals and meeting with UMWA representatives in order to reach agreement to modify the CBA prior to seeking its rejec-

tion. However, the requirements imposed by § 1113(b) prior to rejection of a CBA are both procedural and substantive. *In re Pierce Terminal Warehouse, Inc.*, 133 B.R. 639, 646 (Bankr.N.D.Iowa 1991).

In this case, it is not clear from the evidence presented that the late proposal made by the Debtors was fair and equitable to the union employees as is required by § 1113(b)(1)(A) and that the Debtors negotiated in good faith pursuant to § 1113(b)(1)(B). Not until the Debtors were obligated to Massey, subject only to bankruptcy court approval, did the Debtors seek a modification of the CBA. This modification was first sought following the filing of the Second Amended Motion to Sell and was apparently sought to comply with the procedural requirements of § 1113.

Many courts utilize a nine part test as developed in *In re American Provision Co.*, 44 B.R. 907 (Bankr.D.Minn.1984) to determine if a debtor has satisfied the requirements of § 1113(b) of the Bankruptcy Code. *In re Appletree Markets, Inc.*, 155 B.R. 431, 438 (S.D.Tex.1993); *In re Carey Transp., Inc.*, 50 B.R. 203, 207 (Bankr.S.D.N.Y.1985), *aff'd*, 816 F.2d 82 (2d Cir.1987); *In re Walway Co.*, 69 B.R. 967, 972 (Bankr.E.D.Mich. 1987); *In re Indiana Grocery Co. Inc.*, 136 B.R. 182, 191 (Bankr.S.D.Ind.1990); *In re Express Freight Lines, Inc.*, 119 B.R. 1006, 1011 (Bankr.E.D.Wis.1990); *In re Blue Diamond Coal Company*, 131 B.R. 633, 643 (Bankr.E.D.Tenn.1991); *In re GCI, Inc.*, 131 B.R. 685, 690 (Bankr.N.D.Ind.1991); *In re Alabama Symphony Ass'n*, 155 B.R. 556, 573 (Bankr.N.D.Ala.1993). The test includes the following factors:

1. The debtor in possession must make a proposal to the Union to modify the collective bargaining agreement.

2. The proposal must be based on the most complete and reliable information available at the time of the proposal.

3. The proposed modifications must be necessary to permit the reorganization of the debtor.

4. The proposed modifications must assure that all creditors, the debtor and all of the affected parties are treated fairly and equitably.

5. The debtor must provide to the Union such relevant information as is necessary to evaluate the proposal.

6. Between the time of the making of the proposal and the time of the hearing on approval of the rejection of the existing collective bargaining agreement, the debtor must meet at reasonable times with the Union.

7. At the meetings the debtor must confer in good faith in attempting to reach mutually satisfactory modifications of the collective bargaining agreement.

8. The Union must have refused to accept the proposal without good cause.

9. The balance of the equities must clearly favor rejection of the collective bargaining agreement.

*In re American Provision Co.* at 909.

As the Court finds that the Debtors have not met elements (4), (7) and (9) above for the reasons set forth below, it is not necessary to address any of the other elements. Based upon this finding, this Court cannot reject the CBA under § 113 of the Bankruptcy Code as the Debtors have failed to make a proposal that satisfies the requirements of subsection (b)(1) and the balance of equities does not favor the rejection of the CBA.

Section 1113(c) of the Bankruptcy Code states:

> The court shall approve an application for rejection of a collective bargaining agreement only if the court finds that—
>
> (1) the [debtor in possession] has, prior to the hearing, made a proposal that fulfills the requirement of subsection (b)(1);
>
> (2) the authorized representative of the employees has refused to accept such proposal without good cause; and
>
> (3) the balance of the equities clearly favors rejection of such agreement.

A debtor is required to demonstrate to the court that "all creditors, the debtor and all affected parties are treated fairly and equitably." The Bankruptcy Code under § 327 requires that Chapter 11 debtors are required to disclose the engagement of a broker or other professional, it either

engages or authorizes to conduct sale negotiations on its behalf. These requirements are for the purpose of giving creditors an opportunity to learn of the duty undertaken by the professional broker or sales agent and provide an opportunity for creditors to investigate the disinterestedness of such person. It further provides creditors with notice and an opportunity to participate in whatever process a debtor engages in to find a suitable buyer. Failure of the Debtors to notice creditors or seek approval of the engagement of David Callaghan by its late Chief Executive Officer, William Post, was a violation of the Debtors' duties under Chapter 11 of the Bankruptcy Code and inequitable to the creditors at large in these bankruptcy cases, including, and most importantly, the employee creditors.

Inequitable treatment of employee creditors is also demonstrated by the future compensation negotiated by the officers in the form of consulting and non-compete agreements which totals $150,000 per officer. The Court is sympathetic to the potential personal liabilities of the officers created by certain corporate obligations but believes the structuring of a transaction to attempt to minimalize such liabilities at the cost of the rights of the represented employees is unjust. Such compensation is far greater than the court authorized post-petition salaries. This compensation, in light of the officers total disregard for other employees of the Debtors, is unacceptable, although the Court does not dispute the fact that the purchaser is entitled to hire management as it chooses. For these reasons, the Court finds that any compensation to be paid under the consulting and noncompete agreements appear to be property of the estate and shall be held in trust by counsel for Debtors on the condition that any officer, creditor or purchaser may submit motion or application to the Court for release of such funds by showing a legal right to such.

Other courts reviewing the issue of fair and equitable treatment between employees, creditors, and the debtor have generally found that equitable treatment does not mean equivalent dollar for dollar treatment, but means fairness depending upon the facts of the situation. In *In re Indiana Grocery Co., Inc.,* the bankruptcy court was faced with the issue of the debtor's top management taking no reduction in salaries and receiving bonuses while at the same time attempting to reject the CBA. The court found that, in light of the serious financial problems, the debtor failed to demonstrate that managers and creditors were bearing their share of the burden in the debtor's reorganization, and accordingly, the court disallowed rejection of the CBA. *Id.* at 195.

"The equities relate to the success of the reorganization" as burdens must be shared by workers, management and creditors with no group favored over the other. *In re Express Freight Lines, Inc.,* 119 B.R. at 1017. This Court has found that the Debtors' motion to sell substantially all assets is essentially the Debtors' plan of reorganization. This form of reorganization does not mean a debtor can shortcut its duties or take unfair advantage of any particular group, as in this case, the employees.

The Court finds that a debtor has a duty under § 1113 to not obligate itself prior to negotiations with its union employees, which would likely preclude reaching a compromise. "Good faith bargaining is conduct indicating an honest purpose to arrive at an agreement as the result of the bargaining process". *Matter of Walway Co.,* 69 B.R. at 973. In this case, the Debtors could not have bargained in good faith as the Debtors were, prior to any negotiations with the union, locked into at an agreement where the purchaser was not assuming the NBCWA. Also, *see Matter of GCI, Inc.,* 131 B.R. at 693. Further, there is evidence in this case that the officers did not pursue a possible sale to another buyer who was willing to assume the NBCWA.

The "balancing of equities" factor derives from the standard enunciated in *NLRB v. Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). One such equitable consideration by courts is the "good or bad faith of the parties in dealing with the debtor's financial dilemma". *Truck Drivers Local 807 v. Carey Transp. Inc.,* 816 F.2d 82, 91 (2d Cir.1987). For the reasons set forth above, the balancing of equities favors not rejecting

the CBA. Accordingly, this Court has no alternative but to deny the Debtors' motion for rejection of its collective bargaining agreement.

Therefore, the UMWA employees or any other party with the right to assert claims based on a breach of a CBA will be given twenty (20) days from the date of the sale to file a damage claim for breach of the NBCWA and such claim shall be a post-petition administrative claim. It does not appear that Former Sewell Employees are entitled to damages upon the same basis as existing employees because no evidence has been presented that the Former Sewell Employees are a party to the NBCWA. For these reasons, the Debtors' request for rejection of the CBA is denied, and objections of the UMWA, UMWA Funds and Former Sewell Employees to the rejection of the CBA are sustained.

**B. Debtors' Motion Sale Free and Clear of Any Interest is Granted as it Provides the Only Means to Provide Payment of Creditor and Employee Claims and Will Serve the Community Interest in Protecting the Possibility of Employment at These Mines.**

The Court believes that a sale free and clear of any interest should be granted as the pre-confirmation sale represents the only viable alternative and the sale may occur free of any interest pursuant to § 363(f) of the Bankruptcy Code. Parties-in-interest who submitted final arguments in support of the Debtors' motion to sell include: United Coal Company, Westvaco, New Gauley, Caterpillar and Clarendon. Parties-in-interest who object to the sale include the UMWA, the 1992 Plan, UMWA Funds and Former Sewell Employees.

**(1) Pre–Confirmation Sale of Substantially All of the Debtors' Assets is Permissible and Provides the Only Assurance of Payment to Employee, Secured and Other Creditors.**

The Debtors have proposed a sale of substantially all assets pursuant to 11 U.S.C. § 363(b)(1), which states "the [debtor in possession], after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Even though the Court found it not proper to permit rejection of the CBA, it does not follow that the Court is required or permitted to deny the Debtors' motion to sell. Events subsequent to the filing of the Debtors' motion and the interest of other creditors require consideration based upon the standards of § 363(b). Most importantly the Court must consider the relative equities to all parties-in-interest, especially in light of the fair and reasonable offer presented by Massey. The Court believes that sales under § 363(b) provide protection to objecting parties as such objections or claims may attach to the proceeds of such sale. Employee creditors are protected by the right to file claims for breach of the NBCWA with such damages to be satisfied by payments from the proceeds of sale.

Sales such as the proposed transaction in this case may occur pre-confirmation if "a sound business purpose dictates such action." *In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir.1983). Such test is satisfied if the following elements are demonstrated by the debtor: "(1) a sound business reason or emergency justifies a pre-confirmation sale; (2) a sale has been proposed in good faith; (3) adequate and reasonable notice of the sale has been provided to parties-in-interest; and (4) the purchase price is fair and reasonable." *In re WBQ Partnership,* 189 B.R. 97 (Bankr. E.D.Va.1995), *citing, In re Delaware & Hudson Railway Co.,* 124 B.R. 169, 176 (D.Del. 1991).

It is undisputed that the Debtors' post-petition losses are enormous with the only viable options being a sale of the assets or infusion of working capital from a third party. Post-petition losses have culminated in a cash flow emergency for the Debtors which finally resulted in the shutdown of mining operations a little over a week ago. As is true in most corporate reorganizations, there is no single reason why a business fails. In the coal industry, there are many reasons and those that contributed to failure in these cases are typical of the reasons that contribute to the failure of many coal businesses. As a review of the claims register and docket

will reveal, the Debtors have been unable to keep current with a variety of accounts payable, notes payable, fees and taxes. Low productivity and an inefficient preparation plant finally took its toll on the Debtors. In addition to the normal operating problems, the Debtors were facing unusual weather interruptions and unavailability of railroad cars. In hearings unrelated to the present motion, the Debtors have informed the Court they have had to seek an emergency order to keep the electric power on in the mines and have ceased all coal production. The Debtors are now attempting to collect receivables to maintain the electric power. Without power to the mines, flooding or other damage of valuable mining equipment will occur and may make reentry into the mines uneconomical. For the reasons set forth above, the Court finds that the Debtors' business judgment is justified in seeking a sale of the major portion of assets as any hope of eliminating losses and rehabilitating operations appear unrealistic.

Notice of the proposed sale is in full compliance with Bankruptcy Rule 6004 as notice has been provided to all parties-in-interest. The Court has provided additional time beyond the original deadline of January 16, 1996 for objecting parties to attract buyers who may be interested in submitting an upset bid or filing a plan of reorganization that would assume the NBCWA or negotiate with the Debtors' union employees.

The UMWA argues that the purchase price is unfair and unreasonable, but has not been able to entice Chicopee or any other party to purchase the Debtors' assets on any terms. The Court finds that the Debtors presented sufficient evidence as to the value of these assets on a going concern basis and the existing offer of Massey is greater than the liquidation value of the assets. The UMWA did not present any independent appraisers or appraisals that the value of assets being sold is greater than the offer of Massey. Therefore, the Court finds that the purchase price for these assets as offered by Massey is fair and reasonable and that the Court would subject other creditors to risk of complete or substantial loss by failure to approve the proposed sale.

The "good faith" element under § 363(b) requires a bankruptcy court to make a finding with respect to the "good faith" of the purchaser. *In re Abbotts Dairies, Inc.,* 788 F.2d 143 (3d Cir.1986). The Third Circuit found:

> Unfortunately, neither the Bankruptcy Code nor the Bankruptcy Rules attempts to define 'good faith'.... 'The requirement that a purchaser act in good faith ... speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'

*Id.* at 148, *quoting, In re Rock Indus. Mach. Corp.,* 572 F.2d 1195, 1198 (7th Cir.1978).

There is nothing in this record that Massey, as a proposed purchaser of substantially all of the Debtors' assets, did not provide its offer in good faith. Objecting creditors have failed to demonstrate that Massey's offer was motivated by fraud, collusion or attempt to take unfair advantage of other bidders. In fact, it appears that Massey performed its due diligence, without regard or influence of other potential bids, by determining the amount of fixed capital investment, estimating the amount of remaining coal reserves and potential additional coal reserves, formulating economic projections, and making a proposal to the Debtors in the form of a letter of intent.

The Debtors' business broker marketed the Debtors' assets to other major coal companies, including those who are signatories under the NBCWA, Pittston and Consolidated Coal. However, such companies declined to submit bids on the assets. Additionally, although the officer of Chicopee, Paul Moran, testified that the officers of the Debtors did not fully cooperate in providing information as requested, the Court granted Chicopee additional time to submit an offer, required updated financial information to be provided, and gave notice to all creditors who have objected to the Massey sale of the right they have to propose a plan for a sale of the assets. Therefore, this Court must now dis-

count such testimony as it relates to consideration of a sale under § 363 of the Bankruptcy Code, as Chicopee has not made an offer which the Court can consider nor have objecting creditors joined with Chicopee to file a plan of reorganization or competing purchase offer.

The Debtors have not been presented with any viable alternative offers despite marketing the properties for approximately four to five months. If the employee or other objecting creditors had been able to submit a purchase offer or file a plan of reorganization in connection with Chicopee, the Court would have other alternatives to consider other than the sale to Massey. However, there is only one alternative on the table and this Court finds that this sale is proposed in "good faith" as required by § 363 of the Bankruptcy Code.

 One of the overwhelming themes throughout bankruptcy law is providing the maximum opportunity for Chapter 11 debtors to reorganize their business affairs so as to continue operations and preserve employment. Neither the creditors or shareholders of the Debtors are able to invest the necessary capital to recapitalize these mines, and the only other alternative to this sale is the piecemeal liquidation of assets which is unlikely to yield the same return to these estates. Further, Massey has stated that it expects to operate the mines, employ people in the community, and make substantial capital expenditures to improve the productivity of the property. Massey has further committed to consider all existing employees for hire and to retain no fewer than 25% of the existing work force. *See* "Stipulation of Massey." This is not the commitment existing employees want but it is a commitment that is within the rights of a purchaser who will have invest several million dollars to resume production.

Accordingly, the Court finds that the pre-confirmation sale of substantially all of the Debtors' assets is justified, meets the business judgment test and is the only viable alternative. A sale to Massey provides the only opportunity for future employment as it relates to these coal reserves and a substantial capital infusion into the facilities being acquired that could reach $15 million. If the Debtors converted to a Chapter 7, without the sale of property to Massey, all creditors, including employees, would most likely suffer greater losses, as a result of the likely permanent or long term shutdown of mining on these properties.

**(2) Sale of Assets Free and Clear of Any Interest is Allowed Because the UMWA Employees, the 1992 Plan, and the UMWA Funds Have Claims that May Be Asserted Against the Proceeds.**

 Certain creditors have objected to the proposed sale on the basis that the Debtors may not sell its assets free and clear of interests as found in § 363(f), which states:

(f) The [debtor in possession] may sell property under subsection (b) . . . of this section **free and clear of any interest** in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f) (emphasis added).

Specifically, the 1992 Plan does not believe that premiums due under the Coal Act can be discharged as such premiums are not interests in property as utilized in § 363 but are tax obligations. This distinction is not persuasive. The Debtors have proposed a sale of substantially all of its assets with the proceeds to be distributed to creditors who have filed proofs of claim in the cases and according to the distribution priorities as established by the Bankruptcy Code. The 1992 Plan is a creditor in these cases and has filed a proof of claim for administrative expenses. Accordingly, it is undisputed that

the 1992 Plan is a creditor who will benefit from the proceeds of the sale.

The case law cited by the 1992 Plan is not remotely on point to the facts presented in this case. First, in *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159 (7th Cir.1994), the issue raised was whether product liability claims, arising subsequent to the sale of property and the closing of the bankruptcy case, could be asserted against the purchaser. The Seventh Circuit found that since the debtors were no longer in existence that the bankruptcy court did not maintain any "related to" jurisdiction and that the bankruptcy court's previous injunction against product liability claims was ineffective to claimants who did not have notice of the sale and an opportunity to protect their claims. In this case, full notice of the sale has been provided to the 1992 Plan and the 1992 Plan's rights to share in the proceeds has not been curtailed.

The 1992 Plan also contends that bankruptcy courts have no power to reject tax obligations based on the opinion in *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132 (6th Cir.1991), *cert. dismissed*, 503 U.S. 978, 112 S.Ct. 1605, 118 L.Ed.2d 317 (1992), and that the 1992 Plan's claim is the equivalent of a tax obligation which is nondischargeable pursuant to the holding in *In re Chateaugay*, 53 F.3d 478 (2d Cir.), *cert. denied sub nom.*, —— U.S. ——, 116 S.Ct. 298, 133 L.Ed.2d 204 (1995). The *Wolverine Radio Co.* case cited above did not pertain to a *per se* monetary tax obligation but rather dealt with the ability of the State of Michigan to pass on the experience rating of the debtor to the purchaser of the debtor's assets to determine the future amount of unemployment contributions by the purchaser. The court went on to find that, although a bankruptcy court may determine the amount or legality of any tax pursuant to 11 U.S.C. § 505(a), an unemployment contribution rate set by state agency against a purchaser did not have any "direct effect on the debtor or the estate and in no way implicate[d] the rehabilitation of the debtor or the administration of the debtor's estate." *Id.* at 1138–1139. Nothing could be more different than the facts presented in this case. There is a direct bearing on the ability of the Debtors to effectuate its reorganization by the sale of substantially all assets.

Further, the issue presented before this Court is not whether the claims are dischargeable in these bankruptcy proceedings as in *In re Chateaugay* but whether property may be sold free and clear of the 1992 Plan's interests. *See In re Cardi Const. Co., Inc.*, 154 B.R. 403 (Bankr.D.R.I.1993), where the bankruptcy court imposed Bankruptcy Rule 9011 sanctions for an objection by a taxing authority in a free and clear sale which was based in part on the assertion that tax liens are nondischargeable. For the reasons set forth above, the 1992 Plan's objection as it relates to the § 363(f) sale is overruled.

Objections by the UMWA, UMWA Funds, and Former Sewell Employees ("UMWA objections") appear to assert that since the Debtor cannot reject the CBA under § 1113 of the Bankruptcy Code that a sale under 11 U.S.C. § 363(f) cannot be approved free and clear of their interests. Although the Court agrees that the UMWA employees may assert damages for breach of the CBA, for the reasons set forth below and the generally broad interpretation of "any interest" as utilized in § 363(f), the Court overrules such objections. To do otherwise would permit the UMWA employees to enjoin the sale of property following the financial failure of a UMWA organized company. No law permits this Court to impose such a penalty on all creditors in the case.

Extensive case law exists, which is contrary to the assertions of the above objecting parties, that claims may be extinguished in a free and clear sale of property and not subsequently asserted against a successor. *In re Johns–Manville Corporation*, 837 F.2d 89 (2d Cir.1988), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988) (channeling of claims to proceeds consistent with intent of sale free and clear under § 363(f)); *In re New England Fish Co.*, 19 B.R. 323 (Bankr. W.D.Wash.1982) (transfer of property in free and clear sale included free and clear of Title VII employment discrimination and civil rights claims of debtor's employees); *In re Robert Hoffman*, 53 B.R. 874 (Bankr.D.R. I.1985), *aff'd*, 65 B.R. 985 (D.R.I.1986) (trans-

fer of liquor license free and clear of any interest permissible even though the estate had unpaid taxes); *In re All American of Ashburn, Inc.*, 56 B.R. 186 (Bankr.N.D.Ga.), *aff'd*, 805 F.2d 1515 (11th Cir.1986) (product liability claims precluded on successor doctrine in a sale of assets free and clear); *International Union, Etc. v. Morse Tool, Inc.*, 85 B.R. 666 (D.Mass.1988) (district court upheld bankruptcy court order selling assets free and clear of all encumbrances including collective bargaining agreements); *In re Paris Industries Corp.*, 132 B.R. 504 (D.Me.1991) (free and clear sale enabled bankruptcy court to enjoin product liability claims as asserted against purchaser); *In re WBQ Partnership*, 189 B.R. 97 (Bankr. E.D.Va.1995) (State of Virginia's right to recapture depreciation is an interest as used in § 363(f)).

▮▮▮ The well established rule that sales within a bankruptcy proceeding occur free and clear of any interest is founded upon the principle that good faith purchasers receive clean title to the property and that any claims against the property attach to the proceeds. Accordingly, the definition of "interest" has been interpreted broadly, although not limitless. This channeling effect of claims to the proceeds protects good faith purchasers and thus encourages full value offers to bankruptcy estates. The channeling also prevents disruption of the distribution process under the Bankruptcy Code, precluding creditors from receiving preferential treatment and ensuring that all creditors are treated according to the priorities of distribution as established by Congress in the Bankruptcy Code.

As stated in *In re Johns–Manville Corporation:*

> In *Van Huffel v. Harkelrode*, 284 U.S. 225, 52 S.Ct. 115, 76 L.Ed. 256 (1931), the Supreme Court explained that even absent express statutory authority, the Bankruptcy Court had the inherent equitable power to sell a debtor's property and to transfer third-party interests to the proceeds of the sale. 284 U.S. at 227–228, 52 S.Ct. at 116. See also *Ray v. Norseworthy*, 90 U.S. (23 Wall.) 128, 134–135, 23 L.Ed. 116 (1874) (court may sell bankrupt's property encumbered by third party claims as long as third parties retain their respective priorities in the proceeds of the sale); *Fierman v. Seward National Bank*, 37 F.2d 11, 13 (2d Cir.1930) ("When the bankrupt's property was sold free of liens, the liens upon the property became rights against the substituted proceeds of sale, and claimants to this fund were obliged to assert their rights by applying to the court in whose custody it was."); *In re Penn Central Transportation Co.*, 383 F.Supp. 1128, 1130 (E.D.Pa.1974) (power of a reorganization court to transfer interests in debtor's property to the proceeds of a sale is well established).

*Id.* at 93.

▮▮▮ A fundamental bankruptcy concept is that when these Debtors sought protection under the Bankruptcy Code, estates were created, consisting of the property of the Debtors as defined under 11 U.S.C. § 541. All of the above objecting parties have subsequently filed proof of claims in these cases. Resolution of these claims are within this Court's jurisdiction and claims are satisfied in a liquidating Chapter 11 through the sale of property. Since the Debtors propose to sell substantially all assets, the claims of all creditors in these cases will attach to the proceeds. Courts cannot permit creditors to accept payment of their claim in the bankruptcy case, and also attempt to collect the very same claim from a good faith purchaser of a debtor's property as 11 U.S.C. § 363(f) permits sales to be free of "any interests".

Upon a finding that the term "any interest" as utilized in 11 U.S.C. § 363(f) includes the interests of the objecting parties in this proceeding, including the UMWA, the 1992 Plan, UMWA Funds, and Former Sewell Employees, one of the five conditions under § 363(f), as quoted above, must be satisfied. The Court finds that the interests of UMWA, the 1992 Plan, UMWA Funds and Former Sewell Employees fall under subsection (4) or (5) of § 363(f). Subsection (4) allows a sale free and clear of any interest when such interest is "in *bona fide* dispute". The NLRB's and UMWA's proof of claims appear in part to be duplicative in nature. The NLRB's claim is for an unliquidated amount

of medical and health reimbursements with the UMWA. also seeking reimbursement of the same.

. Under subsection (5) of § 363(f) above, a sale free and clear of any interest may occur if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." All of the claims asserted by the objecting parties may be compensable in a money satisfaction and all of the parties have filed proofs of claims within these cases. Claim is defined as a "right to payment" under § 101(5) of the Bankruptcy Code, and all of the obligations due and owing to objecting parties may be reduced to a "right to payment". In *In re WBQ Partnership* at 107, the bankruptcy court found that it is a "hypothetical" satisfaction under (f)(5), since the subsection uses "could be" compelled and not "must be" or "shall be" compelled. For these reasons, the Debtors have satisfied the elements of 11 U.S.C. § 363(f).

## C. Injunctive Relief is Denied as There is no Showing of the Need for Such Broad Relief and the Debtors Have Not Complied With the Procedural Requirements of the Law.

██ The Debtors, relying upon § 105(a) under the Bankruptcy Code, request the following broad injunctive relief in paragraphs 11 and 12 of their Second Amended Motion:

11. The Debtors seek additional relief under this motion beyond the approval of the sale of assets of the bankruptcy estates of the Debtors, free and clear of liens and encumbrances and the assignment of leases of non-residential real property. The Debtors seek the further relief of an injunction by the Court to apply against all holders of claims, liens and interests against the Debtors or their bankruptcy estates ..., as parties over which the Court has jurisdiction together with the successors to such parties and all person or entities acting for or in concert with any such parties.

The parties to be enjoined shall include each of the person or entities identified in this amended motion as holding liens and interests regarding the property to be sold, each person who is party to the litigation identified in this motion and each creditor of any of the Debtors or their bankruptcy estates who are identified in the mailing matrix of the Debtors' bankruptcy proceedings and who have received a copy of this amended motion.

12. The injunction has been requested by the Debtors to prevent the assertion of any claims, liens, encumbrances and interests ("claims") against the purchaser of the assets to be sold and transferred to the purchaser, existing as of the date of sale and transfer of the assets to the purchaser at closing or which arise after closing but which are based upon or arise from any act, omission, transaction, circumstances, sale of goods or services, state of facts or other condition which occurred or existed on or before the closing, whether or not then known, due or payable.

The Court finds the Debtors' request for injunctive relief is not supported by the record in this case and has not met the requirements of Bankruptcy Rule 7065, although the Court reserves the right to consider any future request for injunctive relief which relates to disregard of the findings and conclusions made herein, namely that a sale under § 363 of the Bankruptcy Code is free and clear of any interest. There has not been a showing that any creditor who will benefit by a sale free and clear of any interest is attempting to satisfy their claim from the purchaser. Accordingly, the objections of the UMWA, UMWA Funds, NLRB and Former Sewell Employees as such relate to the request for injunctive relief are sustained.

██ A request for injunctive relief should specifically identify the parties to be enjoined and the actions to be enjoined. The claims in these cases are varied and are based upon different facts and law. It is the Court's opinion, despite the Debtors invoking Bankruptcy Rule 7065 by Bankruptcy Rule 9014, that injunctive relief would have to be sought by the filing of an adversary proceeding.

The cases cited by the Debtors can be distinguished from the facts presented herein. First, in *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994 (4th Cir.1986), the Fourth

Circuit upheld an injunction which prevented the Debtor from having to defend hundreds of Dalkon Shield claims while also attempting to reorganize its business affairs. In this case, the Court is not presented with numerous product liability claims and no party has taken any action outside the bankruptcy forum against the Debtors or purchaser.

Likewise, in *In re WBQ Partnership,* the debtor sought an injunction by filing an adversary proceeding and the bankruptcy court granted the injunction against one creditor in the bankruptcy proceeding from taking any action against the good faith purchaser of property. The Debtors in these cases seek much broader injunctive relief on behalf of the purchaser by attempting to enjoin all creditors in the bankruptcy proceedings from taking action against Massey.

Finally, in *In re Paris Industries, Corp.,* the purchaser of a Chapter 11 debtor's property sued and was granted a preliminary injunction to prevent third party product liability claims. The relief sought by the Debtors in Lady H appears to be premature as no action has been taken against the purchaser.

### ORDERED RELIEF

For the reasons set forth herein, it is ORDERED that:

1. The Debtors' motion to reject its collective bargaining agreement pursuant to the provisions of 11 U.S.C. § 1113 is denied and the objections of the UMWA, UMWA Funds and Former Sewell Employees are sustained as it relates to rejection of the collective bargaining agreement and the UMWA employees shall be allowed damages for breach of the NBCWA and shall be permitted to amend its proof of claim to assert an administrative expense damage claim twenty (20) days from the date of the sale authorized herein. Finally, post-sale payments to officers of the Debtors, Clyde See and John Leaberry, are found to be property of the estate and are to be paid to counsel for the Debtors to be held in trust pending a determination of the interest any creditors or said officers have to said payments.

2. The Debtors' second amended motion to sell and transfer assets from their bankruptcy estates to the purchaser under the terms set forth in the offer is granted. The sale of assets shall be free and clear of any interest, pursuant to the provisions of the Bankruptcy Code and such interests shall attach to the proceeds of the sale, subject to any rights of the Debtors or others to avoid or contest the validity, extent and priority of such interests. The Debtors are authorized to distribute from the proceeds the funds necessary to consummate the transaction, including payments necessary to assume and assign leases, undisputed secured liens and closing costs. The remainder of funds shall be held in escrow until further order by the Court. The objections of the UMWA, the 1992 Plan, UMWA Funds, and Former Sewell Employees are overruled as it relates to the Debtors' sale free and clear of any interest pursuant to § 363 of the Bankruptcy Code.

3. The injunctive relief as requested by the Debtors is denied without prejudice. The objections of the NLRB, the 1992 Plan, UMWA Funds and UMWA are sustained as it relates to such injunctive relief but the Court reserves jurisdiction to resolve any disputes over claims relating to the property to be sold, claims against the sale proceeds or other issues related to the sale.

4. The protective objections Westmoreland, AMCI, Westvaco, Leckie, Clarendon, New Gauley and Caterpillar are sustained.