53 F.3d 1064
 149 L.R.R.M. (BNA) 2268, 63 USLW 2690,
27 Bankr.Ct.Dec. 309,
Bankr. L. Rep. P 76,494
 In re RUFENER CONSTRUCTION, INC., Debtor.
CARPENTERS HEALTH AND WELFARE TRUST FUNDS FOR CALIFORNIA, et
al., Creditors-Appellants,
v.
Jerome ROBERTSON, Trustee-Appellee.
 No. 93-16098.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 15, 1994.
Decided May 8, 1995.
 
 Christian L. Raisner, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, CA, for creditors-appellants.
 Heinz Binder (argued), Mark V. Isola, Binder & Malter, San Jose, CA, for trustee-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before: TANG, REINHARDT, and RYMER, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 Section 1113(f) of the bankruptcy code limits the power of a bankrupt company to unilaterally terminate or modify the terms of a collective bargaining agreement. Some courts have found that this provision also affects the priority accorded debts payable under a collective bargaining agreement in the bankruptcy priority scheme. In this case, we decide whether Sec. 1113(f) applies to bankruptcies filed under Chapter 7 of the Code. We hold that it does not.
 
 BACKGROUND
 
 2
 Rufener Construction Co. filed a Chapter 7 bankruptcy petition. Over the following two months, the Operating Engineers Trust Funds and the Carpenters Trust Funds (hereinafter "Trust Funds") filed separate claims against the estate totaling almost $75,000. The claims were for employee benefit contributions payable under collective bargaining agreements. The agreements required contributions to employee benefit trust funds on the basis of hours of work performed. The Trust Funds sought payment for work performed prior to the bankruptcy filing and asserted priority status for the claims. The Trustee objected. During discovery, the Trustee learned that the claim of priority status was based on Sec. 1113(f) of the Code rather than Sec. 507, the provision that usually governs claims for wages and benefits. After a full hearing, the bankruptcy court denied priority status holding that Sec. 1113(f) is inapplicable to Chapter 7 proceedings. The Trust Funds appealed to the district court briefing solely the issue of whether Sec. 1113(f) applies to Chapter 7. The district court affirmed, and this further appeal followed.
 
 ANALYSIS
 I.
 
 3
 Under any construction of the statutory provision at issue, the Trust Funds remain entitled to assert their claims against the estate for the amounts owed. However, unless they are awarded priority status for their claims, the funds available for disbursement to creditors may be exhausted before the Trust Funds receive any payment. The bankruptcy code establishes a detailed priority scheme for the payment of unsecured claims. All claims at a particular priority level are paid on a pro rata basis; however, claims of a particular priority level are not paid until all claims of a higher priority have been satisfied. Thus, it is important to the Trust Funds to establish the highest possible priority for their claims.
 
 
 4
 The Trust Funds contend that Sec. 1113(f) covers their claims and affords them super-priority status. Although the super-priority status issue was vigorously disputed before the bankruptcy court, that court's determination that Sec. 1113(f) has no applicability to a Chapter 7 proceeding obviated the need for it to resolve the dispute. Similarly, the district court did not need to consider that issue.[1] Accordingly, on appeal to us, the parties present only the question whether Sec. 1113(f) applies to Chapter 7 proceedings. That question is one of first impression.[2]
 
 
 5
 Congress enacted section 1113 of the Bankruptcy Code in response to the Supreme Court decision in NLRB v. Bildisco, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). In Bildisco, the Court held that a Chapter 11 debtor-in-possession could unilaterally reject a collective bargaining agreement. Unhappy with this result, Congress enacted Sec. 1113 which imposes several procedural requirements that trustees and debtors must follow in order to reject a collective bargaining agreement. These requirements include meeting with the employees' authorized representative, conferring in good faith with that representative in an attempt to reach mutually satisfactory modifications of the agreement, and obtaining court approval of any rejection of the agreement if the balance of the equities clearly favors rejection. The final provision of Sec. 1113 states:
 
 
 6
 No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.
 
 
 7
 11 U.S.C. Sec. 1113(f).
 
 
 8
 The Trust Funds argument centers on the first five words of the provision--"No provision of this title." The "title" in this phrase means Title 11, which encompasses the entire bankruptcy code. The Trust Funds argue that under the plain language of the statute, no provision of the entire bankruptcy code may be construed to permit the unilateral termination of a collective bargaining agreement absent compliance with the provisions of Sec. 1113. Under their reading all collective bargaining agreements are protected by Sec. 1113(f), regardless of the chapter under which the debtor files bankruptcy.
 
 
 9
 In response, the Trustee points to the plain language of Sec. 103(f). Section 103 is found in chapter 1 of the code. This chapter is entitled "General Provisions," and section 103 is captioned "Applicability of chapters." Section 103(f) provides:
 
 
 10
 Except as provided in section 901 of this title,[3] subchapters I, II, and III of chapter 11 of this title apply only in a case under such chapter.
 
 
 11
 11 U.S.C. Sec. 103(f). The Trustee argues that because Sec. 1113 falls within subchapter I of Chapter 11, under the plain language of Sec. 103(f), provision 1113(f) is limited to Chapter 11 bankruptcies.
 
 
 12
 The Trust Funds reply that "no provision of this title" necessarily includes Sec. 103(f). In their view, Sec. 103(f) cannot be construed as limiting the applicability of Sec. 1113(f) to Chapter 11 cases because if Sec. 1113(f) were so limited, Chapter 7 trustees would be free to unilaterally terminate collective bargaining agreements. This construction of Sec. 103(f) would, they argue, necessarily violate the plain language of Sec. 1113(f). Because this construction places Sec. 103(f) and Sec. 1113(f) in conflict, the Trust Funds argue that Sec. 103(f) must yield under the rule that the more recent enactment prevails. In support of this argument, the Trust Funds cite numerous cases construing Sec. 1113(f) broadly and holding that some provision of the Bankruptcy Code must give way to Sec. 1113(f). However, all of the cases they cite for this proposition involve Chapter 11 bankruptcies.[4]
 
 
 13
 Both parties' arguments present plausible constructions of the statute, and both arguments rely heavily on "plain language" theories of interpretation. However, both parties cannot prevail, and we must go beyond a cursory textual analysis to determine the correct construction of the statute. A more rigorous examination of the statutory text reveals that the Trust Funds misunderstand the meaning of "plain language" in statutory construction. When we look to the plain language of a statute in order to interpret its meaning, we do more than view words or sub-sections in isolation. We derive meaning from context, and this requires reading the relevant statutory provisions as a whole. See Beno v. Shalala, 30 F.3d 1057, 1068 (9th Cir.1994). See also Smith v. U.S., --- U.S. ----, ---- - ----, 113 S.Ct. 2050, 2054-57, 124 L.Ed.2d 138 (1993) ("Statutory construction[ ] is a holistic endeavor."). Indeed, the "plain language" of Sec. 1113(f) requires us to examine all of the provisions of the section. The final portion of Sec. 1113(f) states that an agreement cannot be terminated "prior to compliance with the provisions of this section."
 
 
 14
 Reading Sec. 1113 as a whole, without simply focusing on Sec. 1113(f), it is clear that its provisions do not apply to Chapter 7 proceedings. First, the language of the provisions embraces concepts incompatible with Chapter 7 proceedings. Subsection (a) describes a "trustee" as used in Sec. 1113 as one that "has been appointed under the provisions of this chapter"--i.e. a Chapter 11 trustee. Moreover, subsections (a) through (e), make explicit reference to the "debtor in possession," a concept of Chapter 11 not Chapter 7.
 
 
 15
 Second, the procedural requirements imposed by Sec. 1113 appear ill-suited to a liquidation proceeding. Many of the provisions of the section are premised on the notion that the company is still conducting business. The section regulates the manner in which collective bargaining agreements may be implemented, modified, or terminated during the period of reorganization--a period in which the active business of the debtor proceeds apace.[5] Chapter 11 proceedings ordinarily involve companies that plan to continue operations, and the bankruptcy code provides them with a limited amount of protection from creditors so that they can reorganize operations and become once more a viable business entity. In contrast, petitions filed under Chapter 7 are usually for the purposes of liquidation. Ordinarily, the company has ceased operations, and all of its remaining assets will be distributed to debtors on a pro rata basis subject to statutory priority requirements. With few exceptions, companies in Chapter 7 bankruptcy are not engaging in operations to which the terms of collective bargaining agreements would be relevant, and little purpose would be served by the debtor's complying with the requirements of Sec. 1113.
 
 
 16
 Viewing all of the component sections of Sec. 1113 together, we are compelled to reject the Trust Funds' construction of the statute. Although the line between plain and ambiguous is not always clear, we conclude that the meaning of Sec. 1113(f) is "plain" in that this provision is plainly inapplicable to Chapter 7 proceedings. Because the text of Sec. 1113 shows that subsection (f) of that provision applies only to Chapter 11 bankruptcies, we need not rely on other provisions of the bankruptcy code for additional guidance.[6] Therefore, we need not address the parties' arguments regarding Sec. 103(f) or its implicit repeal. We simply note instead that the result we reach is wholly consistent with, if not required by, that section.[7]
 
 
 17
 Reading the language of Sec. 1113 in its entirety, we conclude that it is applicable only to bankruptcies filed under Chapter 11. Thus, we so hold.
 
 II.
 
 18
 The Trustee argues that the Trust Funds' appeal is frivolous, and he seeks attorneys' fees under Federal Rule of Appellate Procedure 38.[8] He contends that the meritlessness of the Trust Funds' argument is evidenced by the fact that no court has ever ruled on or faced the issue of the applicability of Sec. 1113(f) in Chapter 7 cases.
 
 
 19
 However, the absence of authority may cut the other way. See, e.g. Jaeger v. Canadian Bank of Commerce, 327 F.2d 743, 746 (9th Cir.1964). The issue presented here had not been previously decided by a federal court, and the interpretation urged by the Trust Funds was plausible, not frivolous. It would be a gross abuse of our discretion under F.R.A.P. 38 to penalize litigants for raising colorable legal claims simply because they are ones of first impression. The request for fees is denied.
 
 CONCLUSION
 
 20
 A careful analysis of Sec. 1113 in its entirety shows that the section, including Sec. 1113(f), applies only to bankruptcies filed under Chapter 11. Accordingly, the district court's order is affirmed. Each side shall bear its own costs.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 There is a split of authority on this issue: whether claims which fall within the ambit of Sec. 1113(f) are entitled to "super-priority" status. Compare In re Unimet Corp., 842 F.2d 879 (6th Cir.1988) with In re Roth American, 975 F.2d 949 (3d Cir.1992). The Trust Funds assert that if we find Sec. 1113(f) applicable to Chapter 7 proceedings, we should remand to the bankruptcy court for a ruling on the super-priority status issue. Because of our holding that Sec. 1113(f) is inapplicable to Chapter 7 proceedings, such a remand is unnecessary. We express no opinion on the super-priority issue here
 
 
 [2]
 Only one prior case involved the application of Sec. 1113(f) and a Chapter 7 bankruptcy. See In re St. Louis Globe-Democrat, Inc., 86 B.R. 606 (Bkr.E.D.Mo.1988). However, the circumstances of that case did not require the court to discuss the propriety of the application of Sec. 1113(f). The case was originally filed under Chapter 11 and then a year later was converted to Chapter 7. The court never examined whether Sec. 1113(f) was applicable after the conversion to Chapter 7 bankruptcy. It addressed only the accrual of the benefits during the Chapter 11 reorganization period
 All other courts and commentators that have mentioned the Chapter 7 issue have simply assumed that Sec. 1113 did not apply to such proceedings without analyzing or discussing the question in detail. See, for example, In re Roth American, 975 F.2d 949, 956, n. 9 (3d Cir.1992); In re Rayman, 170 B.R. 286, 291 (D.Md.1994); Bruce H. Charnov, The Uses and Misuses of the Legislative History of Section 1113 of the Bankruptcy Code, 40 Syracuse L.Rev. 925, 929 n. 19 (1989); Mark S. Pulliam, et al, Collier Labor Law and the Bankruptcy Code p 3.04 n. 17 (1993).
 
 
 [3]
 Chapter 9 of the Bankruptcy Code governs the adjustment of debts of municipalities. Section 901 sets out which provisions of Title 11 apply to filings of municipalities
 
 
 [4]
 But cf. In re St. Louis Globe Democrat, 86 B.R. 606 (Bkr.E.D.Mo.1988), discussed in note 2
 
 
 [5]
 For example, portions of Sec. 1113(e) provide: "If during the period when the collective bargaining agreement continues in effect, and if essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate, the court ... may authorize the trustee to implement interim changes in the terms, conditions, wages, benefits, or work rules provided by a collective bargaining agreement."
 
 
 [6]
 Moreover, as pointed out by the district court, if Congress intended Sec. 1113 to have general applicability, it made little sense to place it in Chapter 11 of the code rather than Chapter 1 which contains all of the other provisions of general application
 
 
 [7]
 In this case, we could stop our inquiry at a purely textual analysis of the statute; however, it is sometimes helpful to examine legislative history to ensure that the result we reach by our interpretation of the language of the statute is not wholly contrary to the statutory purpose. The little legislative history available for Sec. 1113 supports our construction. While there is no authoritative legislative history or committee report for Sec. 1113, a review of the Congressional Record reveals some helpful comments. The proponents of the amendment to the code continually referred to its application in "reorganization" cases. The term "reorganization" is a creature of Chapter 11 bankruptcy. Although this does not demonstrate that the legislators affirmatively wanted to restrict Sec. 1113 to Chapter 11 cases, it strongly suggests that they were not considering its viability outside the Chapter 11 context
 
 
 [8]
 This rule, captioned "Damages for Delay" states:
 If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee.
 F.R.A.P. 38.