UNITED FOOD AND COMMERCIAL
WORKERS UNION, LOCAL 328,
AFL–CIO, Plaintiff–Appellant,

v.

ALMAC'S INC., et al., Defendants–
Appellees.

No. 96–1010.

United States Court of Appeals,
First Circuit.

Heard May 7, 1996.

Decided July 24, 1996.

Warren H. Pyle, with whom Angoff, Goldman, Manning, Pyle & Wanger, P.C., Boston, MA, was on brief for appellant.

Joel D. Applebaum, with whom Pepper, Hamilton & Scheetz, Detroit, MI, was on brief for appellee.

Before LYNCH, Circuit Judge, COFFIN, Senior Circuit Judge, and CUMMINGS,* Circuit Judge.

LYNCH, Circuit Judge.

This case raises an important issue at the intersection of federal bankruptcy law and federal labor policy. Almac's, Inc., a New England grocery store chain that employed over 3000 people petitioned in 1993 for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* Over the objection of the union representing the employees, the bankruptcy court, in a series of emergency interim orders, allowed the debtor to reduce the employees' wages by nine to fifteen percent for almost a year. The employees claim to have lost over $9,630,000 in wages, but these emergency interim modifications to the collective bargaining agreement permitted the company to survive and ultimately to reorganize into a successor company. The union ultimately agreed to a new collective bargaining agreement with the successor company. But it sought the $9,630,000 lost in the interim in wages, characterizing the interim modifications as a "partial rejection" of an executory contract (the bargaining agreement) within the meaning of 11 U.S.C. § 365. We hold that Congress did not intend for emergency interim modifications ordered under 11 U.S.C. § 1113(e) to be treated as "rejections" of the collective bargaining agreement. Accordingly, the union and its members are not entitled here to their lost wages, and we affirm.

I

Local 328, United Food and Commercial Workers Union, AFL–CIO ("Local 328") and Almac's, Inc. ("Almacs") were parties to a collective bargaining agreement covering the period June 7, 1993 to June 1, 1996 (the "Agreement"). The Agreement delineated the wages, benefits, and other terms and conditions of employment for approximately

---

* Of the Seventh Circuit, sitting by designation.

three thousand Almacs employees in Rhode Island and Massachusetts. On August 6, 1993, shortly after the Agreement went into effect, Almacs petitioned for reorganization under Chapter 11 of the Bankruptcy Code. In October 1993, after reducing the wages and benefits of unrepresented employees, Almacs moved under section 1113(e) to implement interim modifications to the wages and benefits of employees covered by the Agreement.

The bankruptcy court found that "the requested modifications [were] not only essential to the continued operations of Almac's, but [were] vital to any hope of a successful reorganization." It granted Almacs' request for both a fifteen percent reduction in the wages of all employees covered by the Agreement and a reduction in wages and benefits for employees who had been downgraded to part-time positions. This modification was effective through December 31, 1993.

Almacs requested and received consecutive extensions to the modification, although the court reduced the wage modification from fifteen percent to twelve percent and then to nine percent of the wages originally in effect. The court periodically granted modifications effective through September 30, 1994. Throughout this time period, Local 328 and Almacs were involved in negotiations over the fate of the Agreement. Almacs never filed an application under section 1113(b) to reject the Agreement.

Following each modification order, Local 328 and two employees, as class representatives for the Almacs employees, filed claims for the difference between the modified wage and benefit rates and those provided under the Agreement. The total amount ultimately claimed was "at least $9,630,000." Although from the face of the claims it appears that they were initially pressed as administrative expense claims, Local 328 later agreed to assert them only as general unsecured claims. Local 328 does not now purport to assert an administrative claim.

Almacs objected to the claims of Local 328 and the class representatives. After a hearing on October 21, 1994, the bankruptcy court sustained Almacs' objections. Local 328 and the employee claimants appealed to the district court.[1] The district court affirmed, reasoning that the only basis for recognizing a claim would require viewing the modifications to the Agreement as amounting to a rejection and hence a breach of an executory contract, but because interim wage modifications under section 1113(e) are "judicially sanctioned, no breach occurs, and, as a result, no viable claim arises."[2] Local 328 has appealed from that decision.

## II

The bankruptcy court's order is subject to independent review here, and we accept all bankruptcy court findings of fact unless "clearly erroneous" and review rulings of law de novo. In re LaRoche, 969 F.2d 1299, 1301 (1st Cir.1992). Because there was no appeal from the bankruptcy court's interim orders, we accept that court's findings of fact in support of those orders as final and deem there to be no questions about whether those orders were issued in conformance with the statute or about the duration of the emergency conditions.

1. After Local 328 filed the notice of appeal, a plan of reorganization was ratified by the creditor groups and then approved by the bankruptcy court on November 8, 1994. Under the plan, Almacs' assets would be sold to a newly formed company, New Almac's, Inc. ("New Almacs"). New Almacs would continue to operate Almacs' business. Local 328 had entered into a new collective bargaining agreement with New Almacs which took effect upon approval of the plan of reorganization.

In connection with the approval of the plan of reorganization, Local 328 and Almacs stipulated to the rejection of the (original) Agreement by Almacs. In the stipulation, Local 328 waived any claim for damages based on this consensual rejection of the Agreement, but preserved the issue raised in this appeal. No petition for rejection was submitted to the court.

2. The district court also reasoned that Local 328's claim could not be sustained because it would have to be paid before a plan of reorganization could be approved under section 1129(a)(9)(A), thus putting the employer into a Catch–22 situation. Both parties agree that this is a correct statement of the law only with respect to administrative expense claims. Local 328 does not argue on appeal that it has an administrative claim.

**4**

At the outset, it is important to note the precise nature of Local 328's claim. Local 328 argues on appeal that it has a general unsecured claim, based on the characterization of the interim modifications as "partial rejections" of the Agreement. Local 328 does *not* assert here a claim for administrative expenses under section 503 for wages for post-petition work. Nor does Local 328 assert a claim based on the consensual rejection of the Agreement while its appeal of this issue was pending before the district court. Finally, Local 328 does not argue that the bankruptcy court lacked authority to order the interim modifications.

### III

■■■ A brief review of the context in which section 1113 was enacted is helpful to understand Local 328's argument on appeal. Under section 365 of the Bankruptcy Code, a trustee (or the debtor-in-possession) has the choice, subject to court approval, of either assuming or rejecting an executory contract. The rejection of an executory contract "constitutes a breach of such contract . . . immediately before the date of the filing of the petition." 11 U.S.C. § 365(g)(1). In 1984, the Supreme Court issued a decision interpreting section 365, one portion of which prompted Congress to enact section 1113 of the Bankruptcy Code. In *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), the Supreme Court held that collective bargaining agreements were executory contracts for purposes of section 365, but that due to the special nature of such agreements, the rejection of a collective bargaining agreement should be governed by a standard more strict than that applicable to other kinds of contracts. *See id.* at 522 & n. 6, 526, 104 S.Ct. at 1194 & n. 6, 1196. The Court suggested that the rejection of a collective bargaining agreement would result in a general unsecured claim against the bankruptcy estate. *Id.* at 530–31 & n. 12, 104 S.Ct. at 1198–99 & n. 12; *see also In re*

*Continental Airlines Corp.,* 901 F.2d 1259, 1265 (5th Cir.1990). These holdings were not what motivated the enactment of section 1113.

■■■ Congress's primary concern in enacting section 1113 was with one of the Court's other holdings in *Bildisco*—that a debtor did not commit an unfair labor practice by making unilateral changes to the terms and conditions of employment, prior to formally rejecting a collective bargaining agreement, because the agreement was no longer enforceable upon the filing of a bankruptcy petition. 465 U.S. at 534, 104 S.Ct. at 1200. Under section 1113, a collective bargaining agreement remains in effect after the filing of a petition in bankruptcy. A trustee may not make unilateral changes in the terms or conditions of a collective bargaining agreement unless the court fails to rule on an application for rejection within the required time frame. 11 U.S.C. § 1113(d)(2), (f).

■■■ Congress recognized in enacting section 1113(e) that on occasion a debtor may require emergency relief from the collective bargaining agreement prior to rejection, assumption, or agreed-upon modification of the agreement. Section 1113(e) thus provides:

> If during a period when the collective bargaining agreement continues in effect, and if essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate, the court, after notice and a hearing, may authorize the trustee to implement interim changes in the terms, conditions, wages, benefits, or work rules provided by a collective bargaining agreement. Any hearing under this paragraph shall be scheduled in accordance with the needs of the trustee. The implementation of such interim changes shall not render the application for rejection moot.

11 U.S.C. § 1113(e).[3] Local 328 claims that the interim modifications permitted by the

---

3. The other provisions of section 1113 codify the standards that must be met before a collective bargaining agreement may be rejected. In *Bildisco,* the Supreme Court held that rejection of a collective bargaining agreement was permitted if the "debtor can show that the collective-bargain-

ing agreement burdens the estate, and that after careful scrutiny, the equities balance in favor of rejecting the labor contract." 465 U.S. at 526, 104 S.Ct. at 1196. The Court also held that "[b]efore acting on a petition to modify or reject a collective-bargaining agreement . . . the Bank-

statute should be treated as partial rejections of the collective bargaining agreement. From this, it argues it is entitled to rejection damages under section 365.

We note first that even were we to accept Local 328's premise that the interim modifications constitute a partial rejection, section 1113, which governs the rejection of collective bargaining agreements, is silent as to how such a rejection should be treated under section 365.[4] Indeed, courts have divided over whether a claim for damages is permitted at all after the rejection of a collective bargaining agreement under section 1113. *Compare Truck Drivers Local 807 v. Carey Transp., Inc.,* 816 F.2d 82, 93 (2d Cir.1987) (in balancing the equities to determine whether an employer was permitted to reject a collective bargaining agreement under section 1113, one factor to consider was "the possibility and likely effect of any employee claims for breach of contract if rejection is approved"); *In re Maxwell Newspapers, Inc.,* 146 B.R. 920, 934 (Bankr.S.D.N.Y.) (same), *rev'd on other grounds,* 149 B.R. 334 (S.D.N.Y.), *aff'd in part and rev'd in part,* 981 F.2d 85 (2d Cir.1992); *In re Texas Sheet Metals, Inc.,* 90 B.R. 260, 272–73 (Bankr. S.D.Tex.1988) (same); *and In re Moline Corp.,* 144 B.R. 75, 78–79 (Bankr.N.D.Ill. 1992) (making same assumption and suggesting that because section 1113 says nothing about effect of assumption or rejection, "[section] 365 must apply to fill in the gap") *with In re Blue Diamond Coal Co.,* 147 B.R. 720, 727–28 (Bankr.E.D.Tenn.1992), *aff'd,* 160 B.R. 574, 576–77 (E.D.Tenn.1993) (rejecting claim for damages based on the rejection of a collective bargaining agreement). *Cf. Mass. Air Conditioning & Heating Corp. v. McCoy,* 196 B.R. 659 (D.Mass.1996) (assumption of collective bargaining agreement governed by section 365).

We do not reach that question here, however, because we hold that the language and structure of section 1113 do not permit interim changes authorized thereunder to be construed as "rejections" for purposes of section 365(g).

We turn to the unambiguous text of the statute, giving effect to its plain meaning. *See Lomas Mortgage, Inc. v. Louis,* 82 F.3d 1, 3 (1st Cir.1996). Section 1113(e) provides that the trustee may implement "interim changes" and that "interim changes shall not render the application for rejection moot." Section 1113(e) clearly speaks of "rejection" and "interim changes" as two different types of actions. By choosing a different word, "change," to describe the interim action, Congress surely intended for that action *not* to have the consequences that would follow from a "rejection." Indeed, section 1113(e) is explicit that "implementation of such interim changes shall not render the application for rejection moot." That "interim changes" do not moot a "rejection" establishes that the former constitutes relief *different* from the latter.

The framework of section 1113 also shows that "interim changes" are not the same species as a "rejection." The statute, by setting forth the procedures to be followed before a debtor-in-possession "may assume or reject a collective bargaining agreement," 11 U.S.C. § 1113(a), or "reach mutually satisfactory modifications of such agreement," 11 U.S.C. § 1113(b)(2), contemplates three final actions

ruptcy Court should be persuaded that reasonable efforts to negotiate a voluntary modification have been made and are not likely to produce a prompt and satisfactory solution." *Id.* Under section 1113, before filing a petition to reject a bargaining agreement, the debtor must make a proposal to the union, "based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the employees benefits and protections that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably," and must provide the union with the information necessary to evaluate the proposal. 11 U.S.C.

§ 1113(b)(1). A court may approve an application for rejection only upon finding that the debtor or trustee has made the required proposal, that the union refused to accept the proposal without good cause, and that the "balance of equities clearly favors rejection of [the] agreement." 11 U.S.C. § 1113(c). Because Almacs never filed an application to reject the Agreement, these provisions were not invoked.

4. Because the relevant language of section 365(g) has not changed since *Bildisco,* collective bargaining agreements would appear still to be subject to the section's general provisions.

that may be taken with respect to a particular collective bargaining agreement. "Rejection" of the whole agreement is one of these final actions.

Each of the extensive provisions regarding rejection suggests that a collective bargaining agreement is only "rejected" once, in its entirety, not in bits and pieces. This is because the debtor must make a proposal to modify the agreement and meet with the union representatives to attempt to reach consensus before "seeking rejection of [the] collective bargaining agreement." 11 U.S.C. § 1113(b). Further, the court must make certain findings before approving a petition for rejection. *Id.* § 1113(c). Whatever the effects of the rejection of a collective bargaining agreement under section 1113, rejection is an act that involves a final repudiation of the entire agreement. *Interim* changes under section 1113(e), on the other hand, are, by definition, not final. They only are implemented pending the final act of assumption, modification, or rejection, while the agreement still remains otherwise in effect.

Finally, by providing different standards for the approval of "rejections" and "interim changes," Congress clearly intended not to treat the latter as merely a category of the former. The standards governing rejections have both a procedural component and a substantive component. Before the debtor may even file an application to reject a bargaining agreement, it must make a proposal to the union for modifications to the contract, and the application cannot be approved unless the union has rejected the proposal without good cause. 11 U.S.C. § 1113(b)(1), (c)(2). The debtor must also negotiate with the union in an attempt to reach mutually satisfactory modifications. *Id.* § 1113(b)(2). The substantive component requires that the debtor's initial proposal encompass only those modifications "necessary to permit the reorganization of the debtor." *Id.* § 1113(b)(1). Because a plan of reorganization may not be confirmed if it is likely to be followed by liquidation or the "need for further financial reorganization," *id.* § 1129(a)(11), the modifications are proposed with a view to the long-run success of the debtor's business.

The standards for "interim changes," on the other hand, deal with the short term. Only the basic procedural safeguards, "notice and a hearing," are required. The substantive standard is that the changes must be "essential to the continuation of the debtor's business." *Id.* § 1113(e). This language suggests that "interim changes" are only permitted under emergency conditions, when the debtor otherwise would likely collapse. *See In re Salt Creek Freightways,* 46 B.R. 347, 350 (Bankr.D.Wyo.1985); *In re Almac's, Inc.,* 159 B.R. 665, 666 (Bankr.D.R.I.1993). The scope of "interim changes" is more limited than the modifications "necessary for reorganization." *See* Martha S. West, *Life After* Bildisco: *Section 1113 and the Duty to Bargain in Good Faith,* 47 Ohio St. L.J. 65, 146 (1985). Because "interim changes" are ordered to ensure the short-term viability of the debtor, they do not dictate the final decision to assume, reject, or mutually modify the original collective bargaining agreement.

If Congress had intended the result Local 328 urges, it could easily have provided so by inserting an explicit provision allowing for a claim, by calling "interim changes" "partial rejections," or by using other language from which it could be definitively inferred that "interim changes" were "rejections" subject to the consequences delineated in section 365. The language Congress actually used does not suggest this treatment. There is simply no evidence that Congress intended "interim changes" to be the same as "rejection."

Local 328 argues that not treating the section 1113(e) changes here as a rejection would lead to an unreasonable outcome because the modifications in this case had the same effect as a rejection. *See Massachusetts v. Blackstone Valley Elec. Co.,* 67 F.3d 981, 986 (1st Cir.1995) ("[P]lain meaning must govern [a statute's] application, unless a palpably unreasonable outcome would result."). Without adopting Local 328's premise, we conclude that the result we reach is far from unreasonable. Congress could have thought the denial of a remedy to compensate for interim modifications was a reasonable *quid pro quo* to the debtor, in exchange for the protective benefits that flow to employees from allowing the collective bargain-

ing agreement to remain in effect following the filing of a Chapter 11 petition. Before Congress enacted section 1113, a debtor was permitted to make unilateral modifications to a collective bargaining agreement after filing a petition in bankruptcy and such modification did not constitute an unfair labor practice. *Bildisco*, 465 U.S. at 534, 104 S.Ct. at 1200. In section 1113, Congress provided that collective bargaining agreements are enforceable against the debtor after the filing of a petition for reorganization. 11 U.S.C. § 1113(c), (e), (f); 5 *Collier on Bankruptcy* ¶ 1113.01[4][b], at 1113–14 to 1113–15 (Lawrence P. King ed., 15th ed.1995). In exchange for this heightened protection, Congress could reasonably have required employees to accept decreased wages and benefits in an emergency before any final action on the collective bargaining agreement is taken, without providing for the employees to recover all or part of the wages and benefits lost in the interim reductions.

The interim changes authorized by the bankruptcy court under section 1113(e) were not, in and of themselves, "rejections" of the Agreement within the meaning of the Bankruptcy Code.

*Affirmed.*