**In re FAMILY SNACKS INCORPORATED, d/b/a/ Guy's Foods, Debtor.**

No. 00–40514.

United States Bankruptcy Court, W.D. Missouri.

June 8, 2000.

Stephen B. Sutton, Lathrop & Gage, Kansas City, MO, for Debtor.

Mark A. Shaiken, Stinson, Mag & Fizzell, PC, Kansas City, MO, for Unsecured Creditors Committee.

Gordon G. Atcheson, Kansas City, KS, for United Food & Commercial Workers Local No. 211.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

Before the Court is the motion filed on May 1, 2000, by Debtor Family Snacks, Inc. (Family Snacks) to reject a collective bargaining agreement with the United Food & Commercial Workers Local No. 211 (the UFCW), and a motion by the UFCW to treat the unpaid pre-petition medical expenses of its union members as administrative expenses. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### FACTUAL BACKGROUND

Family Snacks was in the business of manufacturing and selling Guy's Potato Chips, and other snack foods. It had three categories of workers, consisting of members of the UFCW, members of the Teamster's Union, and nonunion management employees. Family Snacks and The UFCW negotiated the CBA with an effective date of August 1, 1998, and a term of five years. The CBA required Family Snacks to provide health care insurance to both its union members, Teamsters' Union members and other management employees. To do so, Family Snacks initiated a self-funded health care plan. As Family Snacks financial situation deteriorated, however, it was unable to promptly pay medical claims for its employees, including the union members. On February 14, 2000, Family Snacks filed this Chapter 11 bankruptcy petition, and the case was assigned to the Honorable Frank W. Koger, Bankruptcy Judge, Western District of Missouri. Shortly thereafter, on February 25, 2000, Family Snacks filed its motion for an Order allowing Family Snacks to sell its assets to General Products and Services

Corporation (GPS), subject to an auction to be conducted by the Court (the Asset Purchase Sale). Family Snacks also moved for an Order setting the hearing date, establishing auction procedures, and shortening and limiting notice. On March 1, 2000, the UFCW filed an objection to the Asset Purchase Sale.[1] In that motion the UFCW argued that Family Snacks could not sell its assets free and clear of the CBA until it followed the procedures outlined in section 1113 of the Bankruptcy Code (the Code), since that section controls how a debtor can modify or reject a collective bargaining agreement. On March 9, 2000, the UFCW filed a motion to treat the unpaid medical claims of its members as administrative expenses.[2] In that motion the UFCW argues that Family Snacks' failure to reject the CBA as required by section 1113 of the Code prior to the Asset Purchase Sale means Family Snacks constructively assumed the CBA. The UFCW then argues that since Family Snacks assumed the CBA, any amounts owed under the CBA, including the unpaid medical claims of the union members, are entitled to administrative expense priority as if they were a post-petition debt.[3] As such, the UFCW members would be entitled to payment for their unpaid medical expenses ahead of all other pre-petition debts.[4] The Court scheduled a hearing and auction for March 22, 2000. At the time of the auction the Court also called for hearing the UFCW's objection to the Asset Purchase Sale. In its Order of March 22, 2000, the Court approved the Asset Purchase Sale and overruled the UFCW's objection to the sale. On April 5, 2000, the Court held a hearing on the UFCW's motion to have the medical claims treated as administrative expenses. On April 13, 2000, finding the possibility of a conflict of interest as to the UFCW's motion to treat its members' unpaid pre-petition medical expenses as administrative expenses, Judge Koger recused himself and transferred this issue to the undersigned.

This Court scheduled a telephone conference following the transfer. At that conference all parties consented to my consideration of the transcripts of the hearings on March 22, 2000, and April 5, 2000, without the necessity of rehearing that evidence. On May 1, 2000, however, Family Snacks filed a motion to reject the CBA pursuant to section 1113. The UFCW objected to that motion, and this Court scheduled a hearing for May 11, 2000. At that hearing, counsel for the UFCW stated that 250 union members hold approved, but unpaid, pre-petition medical claims in the approximate amount of $491,000.00. There are other former employees who do not belong to the UFCW, but who have similar claims for unpaid pre-petition medical expenses. The practical impact of the UFCW's argument would be to give its members' claims a higher priority then the similar claims of the other employees.

It is undisputed that section 1113 of the Code controls in this matter. I must first look to section 1113 for guidance regarding the timing of a motion to assume or reject a CBA. I will then determine if Family Snacks has stated a case for rejection under the strict guidelines of Section 1113. Finally, since I find that I must deny Family Snacks' motion to reject the CBA, I will then determine the effects of the denial of that motion.

## DISCUSSION

■ Section 1113, by its terms, provides the exclusive mechanism for either assuming or rejecting a CBA:

(a) The debtor-in-possession, or the trustee if one has been appointed under the provisions of this chapter, ... may assume or reject a collective bargaining

---

1. Doc. # 71.

2. Doc. # 87.

3. 11 U.S.C. § 503(b).

4. 11 U.S.C. § 507(a)(1).

agreement only in accordance with the provisions of this section.[5]

Section 1113 was added to the Code by section 541(a) of the Bankruptcy Amendments Act of 1984. It was added following the Supreme Court's decision in *National Labor Relations Bureau v. Bildisco.*[6] In *Bildisco,*[7] the Supreme Court held that a collective bargaining agreement is an executory contract subject to rejection, pursuant to section 365 of the Code, by a debtor-in-possession.[8] Congress intended, with the addition of section 1113, to restrict the modification or rejection of a CBA to those instances where the debtor-in-possession or trustee, as the case may be, can demonstrate that such modification or rejection is necessary to permit the reorganization of the debtor.[9] Section 1113 provides as follows:

(b)(1) Subsequent to filing a petition and prior to filing an application seeking rejection of a collective bargaining agreement, the debtor-in-possession ... shall—

(A) make a proposal to the authorized representative of the employees covered by such agreement, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the employees benefits and protections that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably; and

(B) provide, subject to subsection (d)(3), the representative of the employees with such relevant information as is necessary to evaluate the proposal.

(2) During the period beginning on the date of the making of a proposal provided for in paragraph (1) and ending on the date of the hearing provided for in subsection (d)(1), the trustee shall meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications of such agreement.

(c) The court shall approve an application for rejection of a collective bargaining agreement only if the court finds that—

(1) the trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (b)(1);

(2) the authorized representative of the employees has refused to accept such proposal without good cause; and

(3) the balance of the equities clearly favors rejection of such agreement.[10]

I must first, therefore, determine if rejection of the CBA is necessary for Family Snacks' reorganization. Family Snacks closed the Asset Purchase Sale on March 29, 2000.[11] By its own admission Family Snacks "does not anticipate reorganizing as an on-going business enterprise that will employ the type of workers covered by the CBA."[12] As the Court held in *United*

---

**5.** 11 U.S.C. § 1113(a).

**6.** *American Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76, 82 (3rd Cir.1999).

**7.** 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) (holding that the procedural requirements of section 1113 are premised on the notion that the company is still conducting business as usual).

**8.** *Id.* at 465 U.S. 522–23, 104 S.Ct. at 1194.

**9.** 130 Cong.Rec. H7496 (daily ed. June 29, 1984) (Remarks of Rep. Morrison).

**10.** *Id.* at § 1113(b) and (c).

**11.** *See* Deb.Ex. # 5 (Letter dated April 13, 2000), written by counsel for Family Snacks, that states, "the Debtor has focused its attention on facilitating and consummating the sale of substantially all of its business assets, which it successfully completed as of March 29, 2000 (the Closing Date)."

**12.** *Id.*

*Food and Commercial Workers Union, Local 328 v. Almac's, Inc. (In re Almac's, Inc.),*[13] section 1113 restricts a debtor to modifications of a collective bargaining agreement that are necessary to permit the reorganization of the debtor, and the proposals must be made with a view to the long-run success of the debtor's business.[14] In *Sheet Metal Workers' International Association, Local 9 v. Mile Hi Metal Systems, Inc. (In re Mile Hi Metal Systems, Inc.),*[15] the Court found that, while the modification or rejection of a collective bargaining agreement did not have to be absolutely necessary to the debtor's reorganization, the debtor had the burden of proving that it could emerge from its reorganization as an economically viable operation.[16] Family Snacks can simply not prove that in this situation. I am aware of the cases that hold an asset purchase sale is, in fact, a form of reorganization in that a business continues as a going concern, therefore, a liquidating debtor is not precluded from rejecting a CBA.[17] In those cases, however, the debtor was asking to reject the CBA prior to the asset purchase sale. That is not the situation here, since Family Snacks did not file its motion to reject until after the sale had been completed. I am also aware of Family Snacks' argument that it was in the best interest of all concerned to complete the sale, have the business continue as a going concern, and continue to employ the majority of its employees. That may well be true, but

section 1113 first requires the debtor to establish that rejection is necessary to permit the reorganization of the debtor. Since Family Snacks is not reorganizing, and since, in any event, it now has no employees, rejection of the CBA is not necessary for its reorganization. For that reason, Family Snacks' motion to reject the CBA must be denied.

■ That finding is not dispositive, however. In order for the UFCW to succeed in ratcheting its members' claims up above those of other employees, it seeks a holding not just that the CBA cannot be rejected, but also that it has been assumed. Looming in the background is the specter of conversion to Chapter 7. If so, section 1113 would no longer be applicable, and Family Snacks, or the Chapter 7 trustee, could seek to reject the CBA as an executory contract under section 365.[18] Section 365 does not offer the protections for union members contained in section 1113, but instead gives the trustee broad discretion to assume or reject.[19] Therefore, while the case is still in Chapter 11, the UFCW seeks a finding either that the CBA was impliedly assumed at the time of the sale, or that denial of Family Snacks' motion to reject means that the CBA has now been assumed. For reasons to be stated, I find that the CBA has not been assumed.

■ The UFCW argues first that approval of the sale, without treating the

---

13. 90 F.3d 1 (1st Cir.1996).

14. *Id.* at 6. *See also Carpenters Health and Welfare Trust Funds for California v. Robertson (In re Rufener Construction, Inc.),* 53 F.3d 1064, 1067 (9th Cir.1995).

15. 899 F.2d 887 (10th Cir.1990).

16. *Id.* at 893.

17. *See, e.g., In re Lady H. Coal Co.,* 193 B.R. 233, 240 (Bankr.S.D.W.Va.1996) (citing *In re Maxwell Newspapers, Inc.,* 146 B.R. 920 (Bankr.S.D.N.Y.), *aff'd in part and rev'd in part,* 149 B.R. 334 (S.D.N.Y.), *aff'd in part and rev'd in part,* 981 F.2d 85 (2nd Cir.1992)); *United Food and Commercial Workers Union,*

*Local 770 v. Official Unsecured Creditors Committee (In re Hoffman Bros. Packing Co.),* 173 B.R. 177, 186 (9th Cir. BAP 1994) (citing *Maxwell* for the premise that the sale of a going concern asset to a third party is irrelevant to considerations under section 1113, since the goal of Chapter 11 is to continue the enterprise regardless of the ownership).

18. *See N.L.R.B. v. Bildisco,* 465 U.S. 513, 526, 104 S.Ct. 1188, 1196, 79 L.Ed.2d 482 (1984); *See also Carpenters Health and Welfare Trust Funds for California v. Robertson (In re Rufener Construction, Inc.),* 53 F.3d 1064, 1067 (9th Cir.1995) (holding that section 1113 is not applicable in a Chapter 7 proceeding).

19. 11 U.S.C. § 365(a).

CBA, means that it was impliedly assumed. Prior to the sale, however, the UFCW objected, contending, in effect, that Family Snacks should be required to assume the CBA, and assign its obligations to the buyer as a condition of the sale. That objection was overruled, and the sale was allowed to proceed without treating the CBA, and in particular without requiring the buyer to take on its obligations. The UFCW now attempts to impose those obligations, not on the buyer, but on Family Snacks and its other creditors. But, since the UFCW's objection to the sale was overruled, and that Order is now final, it is the law of this case that assumption and assignment of the CBA to the buyer was not a necessary component of the sale. I, therefore, cannot find that the CBA was impliedly assumed by the debtor at the time of the sale.

■ The UFCW next argues that denial of a motion to reject the CBA, pursuant to section 1113, results in an "implied assumption," and that such implied assumption means that the pre-petition obligations to its members are to be treated as post-petition administrative expenses. In making that argument, the UFCW relies on a line of cases whose lineage can be traced to *United Steel Workers of America v. Unimet Corporation (In re Unimet Corporation)*,[20] a Sixth Circuit decision. In *Unimet*, the debtor contended that post-petition retiree benefits are not protected by section 1113, since retirees are not employees, and that, therefore, such claims are not entitled to administrative expense status.[21] The actual holding of the case was that retirees are

to be treated as employees under section 1113.[22] The Sixth Circuit, therefore, held that to the extent retiree benefits accrue post-petition, a debtor-in-possession that has not rejected a CBA is obligated to pay them.[23] This is consistent with the treatment of all executory contracts, not just CBA's. A Chapter 11 debtor is required to, for example, pay all rent due post-petition on a lease until a court order for rejection is obtained.[24] But it is only when the debtor obtains an order of assumption that it is required to pay pre-petition arrearages ahead of all other pre-petition obligations.[25] Thus, until assumption or rejection, the pre-petition obligations due under the lease are in limbo. In the case before me, it is noteworthy that the obligations owed are all pre-petition, since the buyer has hired almost all of Family Snacks' employees and has paid all their post-petition medical benefits.

■ Several cases since *Unimet* seem to hold that any claim incurred under an unrejected CBA is entitled to administrative expense status because of section 1113.[26] But this conclusion confuses the right to payment in an ongoing Chapter 11 case with the right to priority in a liquidation case. Pre-petition obligations under a CBA would be entitled to immediate payment if the debtor did assume the CBA.[27] However, the fact that a debtor has not yet rejected a CBA does not mean that it has been assumed.

At least one Circuit Court has indicated that a debtor that has not sought to reject a collective bargaining agreement may be found to have assumed it.[28] But that

**20.** 842 F.2d 879 (6th Cir.1988), *cert. denied*, 488 U.S. 828, 109 S.Ct. 81, 102 L.Ed.2d 57 (1988).

**21.** *Id.* at 882.

**22.** *Id.* at 883.

**23.** *Id.*

**24.** 11 U.S.C. § 365(c)(3).

**25.** *Id.* at § 365(b)(1).

**26.** *See Adventure Resources v. Holland*, 137 F.3d 786, 798 (4th Cir.1998), *cert. denied*, 525 U.S. 962, 119 S.Ct. 404, 142 L.Ed.2d 328 (1998); *In re Lady H. Coal Co.*, 193 B.R. 233, 243 (Bankr.S.D.W.Va.1996).

**27.** 11 U.S.C. § 365(b)(1).

**28.** *See In re Roth American*, 975 F.2d 949, 957 (3rd Cir.1992).

Court went on to state that "it simply does not follow, as the Union contends, that all claims under unrejected collective bargaining agreements are entitled to first priority." [29] Instead, *Roth* found that such claims are entitled to administrative expense priority only to the extent that they are incurred post-petition. [30]

Unfortunately, at least two cases have found that the failure to reject a collective bargaining agreement results in an assumption. [31] In one, the Fourth Circuit relied on the dicta in *Roth*, but not the holding. [32] In the other, the court denied a motion to reject under section 1113, and, without citation to any authority, authorized the filing of claims for breach of the CBA as an administrative expense. [33]

■ The better view, however, is that of the Second Circuit, which has held that the broad language used by the Court in *Unimet* should not be construed to require a superpriority for all claims related to collective bargaining agreements. [34] As the Court there held:

In enacting section 1113, Congress was concerned with preventing employers from using bankruptcy as an offensive weapon to rid themselves of burdensome collective bargaining agreements, not with re-ordering the priority in which claims would be paid. [35]

■ Section 1113 states that the debtor-in-possession may assume or reject a collective bargaining agreement only in accordance with the provisions of that section. In other words, the debtor-in-pos-

session must take some action to do either. The language in section 1113 is in conformity with the language in section 365, which also provides that a debtor-in-possession must do something to assume an executory contract:

Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor. [36]

This language is also in conformity with the definition of the word assume, which means to take upon oneself or to undertake an obligation. [37] And this language complies with Rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure. Rule 6006 provides that a proceeding to require the debtor-in-possession to determine whether to assume or reject an executory contract is governed by Rule 9014. [38] Rule 9014 provides that a Rule 6006 proceeding is a contested matter and the party against whom relief is sought is entitled to notice and a hearing. [39] Neither Rule 6006(b) nor Rule 9014 allows for an "implied" assumption or rejection of an executory contract. In *In re Typocraft Company*, the Court discussed the fact that section 1113 makes no further reference to assumption save to state that section 1113 is the only mechanism for assuming or rejecting a collective bargaining agreement. [40] The *Typocraft Company* Court, therefore, held that the process of assumption of a collective bargaining agreement must, by necessity, be governed by

---

**29.** *Id.* at 957.

**30.** *Id.*

**31.** *See Adventure Resources v. Holland,* 137 F.3d 786 (4th Cir.1998); *In re Lady H. Coal,* 193 B.R. 233 (Bankr.S.D.W.Va.1996).

**32.** *Adventure Resources* at 798.

**33.** *Lady H. Coal,* at 243.

**34.** *Airl Line Pilots Association International v. Shugrue (In re Ionosphere Clubs, Inc.),* 22 F.3d 403 (2nd Cir.1994).

**35.** *Id.* at 408.

**36.** 11 U.S.C. § 365(a).

**37.** **Webster's New World Dictionary** 84 (2nd College ed.1980).

**38.** Fed.R.Bankr.P. 6006(b).

**39.** *Id.* at 9014.

**40.** 229 B.R. 685, 688 (Bankr.E.D.Mich.1999).

section 365.[41] Be that as it may, whether acting pursuant to section 365 or section 1113, the Code requires some affirmative action on the part of a debtor-in-possession, and an Order of the Court, before the debtor-in-possession can be found to have assumed a collective bargaining agreement.[42] As the *Typocraft* Court stated, "the majority position is that a debtor cannot tacitly or by default assume a collective bargaining agreement." [43] In *In re Manor Oak Skilled Nursing Facilities, Inc.,*[44] the Court refused to accept the union's argument that a collective bargaining agreement is deemed assumed if not rejected, but it did find that all aspects of the agreement remain in effect and binding until the Court authorizes a rejection.[45] The Court, therefore, ordered the debtor to either assume or reject the agreement within 30 days, opining that the debtor could not enjoy both the benefits of rejection and the benefits of assumption by taking no action to do either until after its Plan of Reorganization is confirmed.[46] In *In re Moline Corporation,*[47] the Court stated that a collective bargaining agreement is an executory contract, and as with any other executory contract the trustee or debtor-in-possession has the option of assuming or rejecting it.[48] This position is not in conflict with other cases that hold that an unassumed and unrejected collective bargaining agreement continues in effect post-petition until the debtor is able to propose a confirmable plan that deals with all executory contracts, including the collective bargaining agreement.[49] Section 365(b)(1), if it applies to collective bargaining agreements, requires Court approval and requires the debtor to cure all defaults or provide adequate assurance that the debtor will promptly cure all defaults.[50] No such assurance can be given without a motion by the debtor to assume followed by a finding of the Court that the debtor is eligible to assume.

■ Therefore, whether section 1113 is the exclusive mechanism for assuming or rejecting a collective bargaining agreement, or whether section 365 is the exclusive mechanism for assuming a collective bargaining agreement, only the debtor-in-possession or the trustee may initiate those procedures. A creditor can object to either the assumption or rejection, and can offer evidence that will allow the Court to prevent either, but the creditor cannot force the assumption, pursuant to either section. The burden is on the debtor-in-possession, and the Court must make a finding that the debtor-in-possession either met or failed to meet that burden.

In order to propose a confirmable Plan of Liquidation (the Plan), Family Snacks must deal with the CBA in some manner. It could assume the CBA and propose a Plan that deals with the default. Or, it

**41.** *Id.; See also American Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76, 82 (3rd Cir.1999) (holding that section 365 of the Code, and not section 1113, governs assumption); *Massachusett's Air Conditioning & Heating Corporation v. McCoy,* 196 B.R. 659, 663 (D.Mass.1996) (holding that in order to assume a collective bargaining agreement debtor must cure its default, pursuant to section 365 of the Code).

**42.** *See In re Gateway Apparel, Inc.,* 238 B.R. 162, 164 (Bankr.E.D.Mo.1999) (holding that the intention to assume an executory contract must be clearly declared by the debtor-in-possession, notice of the intention must be given to interested parties, and the Court must approve the assumption after a hearing if any party objects).

**43.** 229 B.R. 685, 689 (Bankr.E.D.Mich.1999).

**44.** 201 B.R. 348 (Bankr.W.D.N.Y.1996).

**45.** *Id.* at 350.

**46.** *Id.*

**47.** 144 B.R. 75 (Bankr.N.D.Ill.1992).

**48.** *Id.* at 77.

**49.** *See* 11 U.S.C. § 1123(b)(2); *In re Moline Corporation,* 144 B.R. 75, 77 (Bankr.N.D.Ill. 1992); *In re St. Louis Globe–Democrat, Inc.,* 86 B.R. 606, 607 (Bankr.E.D.Mo.1988).

**50.** 11 U.S.C. § 365(b)(1)(A).

could convert to Chapter 7. In Chapter 7 Family Snacks is no longer subject to section 1113's restrictions, and would be in a position to reject the CBA, subject only to a showing that the CBA burdens the estate and that the equities favor rejection.[51]

■ In accordance with these findings of fact and conclusions of law, the UFCW's motion to have its members allowed and unpaid pre-petition medical expenses be treated as administrative expenses is not ripe for decision until such time as Family Snacks affirmatively assumes the CBA. I will, therefore, deny the motion without prejudice to the UFCW's right to raise the issue again at such time as Family Snacks has obtained an Order allowing assumption of the CBA, or has confirmed a Plan assuming the CBA.

An Order in accordance with this Memorandum Opinion will be entered this date.

---

**51.** *See N.L.R.B. v. Bildisco,* 465 U.S. 513, 526, 104 S.Ct. 1188, 1196, 79 L.Ed.2d 482 (1984).