Shane O'Keefe v. Brodeur          CV-96-336-B     04/25/97

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Shane O'Keefe**

v.                                                            96-336-B

**Paul Brodeur, Commissioner**
**of the NH Dept. of Corrections**


**MEMORANDUM AND ORDER**

Shane O'Keefe was tried and convicted in Coos County Superior Court of sexually assaulting a fifteen year-old girl. His habeas corpus petition challenges the constitutionality of the trial court's order closing the courtroom during the victim's testimony.  Because O'Keefe filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-32, Title I, § 104, 110 Stat. 1214, 1218 (1997), his claim is subject to the new standards of review that now govern federal habeas corpus petitions challenging state court convictions.[1]  Using these

---

[1]  The circuit courts have reached conflicting conclusions as to whether AEDPA applies to petitions filed prior to its enactment.  Compare Hunter v. United States, 101 F.3d 1565, 1573 (11th Cir. 1996) (en banc), petition for cert. filed, 65 U.S.L.W. 3648 (U.S. Mar. 10, 1997) (No. 96-1443); Drinkard v. Johnson, 97 F.3d 751, 764-66 (5th Cir. 1996), cert. denied, 117 S. Ct. 1114 (1997); Lindh v. Murphy, 96 F.3d 856, 863-64 )7th Cir. 1996), cert. granted in part, 117 S. Ct. 726 (1997); and Lennox v. Evans, 87 F.3d 431, 434 (10th Cir. 1996), cert. denied, 117 S.

standards, I determine that O'Keefe is not entitled to the relief he seeks.

## I.

The prosecutor sought to close the courtroom to protect the victim from the additional psychological harm that she would suffer if she had to testify in open court. He justified his request with testimony from the county's victim/witness coordinator, Donna Ransmeier. Ransmeier has a bachelor's degree in human services and she was then enrolled in a master's degree program in clinical psychology. She had served as a victim/ witness coordinator for four and one-half years when she was called to testify. During that time, she had prepared over 300 children for courtroom testimony. She also had worked with the victim on several prior occasions, including the morning of the hearing. Ransmeier testified that: (1) the victim, who had recently turned sixteen, was immature for her age; (2) she was

Ct. 746 (1997) (all holding that AEDPA is applicable to petitions pending on the date of enactment); with Jeffries v. Wood, 103 F.3d 827 (9th Cir. 1996) (en banc) (full opinion forthcoming); and Boria v. Keane, 90 F.3d 36, 38 (2d Cir. 1996), petition for cert. filed, 65 U.S.L.W. 3342 (U.S. Oct. 11, 1996) (No. 96-628) (both deciding AEDPA is applicable only to petitions filed after date of enactment). Given the timing of O'Keefe's petition, the Act is applicable under either view.

very frightened about the prospect of testifying; (3) neither she nor her mother wanted her to testify in open court; (4) leaving the courtroom open would adversely affect her ability to testify; and (5) testifying in open court would likely increase the severity of the psychological harm that she would suffer by having to testify.

In granting the motion, the court ruled as followed:

> THE COURT:   The Court has read the case regarding the State's motion for closure and has considered the testimony and the arguments of counsel and is going to grant the motion.  The case relied on by the State deals with [N.H. Rev. Stat. Ann.] 632-A:8, and specifically deals with a minor under the age of 16. The language of the case law is -- of the case itself is broad enough to apply to this case in my opinion, and based on the testimony from Donna Ransmeier that the victim is immature for her age, is scared about testifying, has difficulty in discussing the sexual acts which is [sic] the subject of this case, and is shy, hesitant and cries, and that the situation exists even as of this morning, and because she wants the hearing closed and because her mother wants the hearing closed and because Donna Ransmeier is of the opinion that she will be more emotionally harmed by testifying in open court, all that, plus the following causes the Court to grant this motion.  In court this morning there were at least three people that the Court could identify, two of whom are press people from Berlin, one reporter with the Berlin Daily Sun and the other reporter with the Berlin Reporter; and while the Court's experience has been that both of these reporters in their papers keep confidential the identity of minor victims, the fact remains that they are here and obviously intend to do a news article about this case.
> There's also a situation with which the Court is concerned, which is that so far in the month of October

3

there have been, counting this trial, four jury trials involving sexual assault allegations, and at the time of the third such case in which both these counsel were previously involved the reporter from the Caledonian-Record, which is a Vermont newspaper, indicated in a discussion with the clerk that his editor did not agree as a blanket agreement not to print the name of a minor victim. And while Mr. Riviere is not here this morning, or I have no idea if he intends to appear later, he has been here for the last three trials that I am aware of, and I am not sure if he was aware of the first trial or not. It makes no difference. There was also in the courtroom this morning a male who I understand to be the defendant's stepfather.

[O'KEEFE'S COUNSEL]: That's correct.

THE COURT: And for all these reasons, because I don't find any prejudice to the defendant, I am going to grant the motion. The Court is only going to be closed during the time that the victim testifies, and I have thought about possible reasonable alternatives to closing the proceedings. I can find no reasonable alternative to closing the courtroom for the reasons advanced. I find that other concern to be realistic, particularly given the fact that she is hardly over the age of 16 and is still in the 11th grade of high school in Berlin, and given the fact that she is confronted with looking at two Berlin reporters I think her concern is real so the motion is granted.

The trial judge also stated during the hearing it would be "devastating" to the victim if she were required to testify in open court.

O'Keefe appealed his convictions, but a judicial referee panel affirmed his conviction and the New Hampshire Supreme Court

4

denied his motion for a rehearing.[2]  The issue raised in O'Keefe's present petition was presented and rejected in the state court appellate proceedings.

## II.

AEDPA significantly changes the way in which federal courts evaluate habeas corpus petitions challenging state court convictions.  Among other things, federal courts must now use three different standards of review when considering state court rulings:  Legal determinations must be examined to determine whether they are contrary to "clearly established federal law, as determined by the Supreme Court of the United States"; rulings applying the law to the facts of the case, so-called mixed questions of law and fact, must be reviewed to determine whether they are unreasonable in light of clearly established Supreme Court precedent;[3] and the trial court's factual findings may not be set aside unless the petitioner can point to clear and

---

[2]  The decision of a judicial referee panel does not become effective until it is approved by the Supreme Court.  N.H. Sup. Ct. R. 12-C.  Here, the court approved the panel's decision by denying O'Keefe's motion for rehearing.

[3]  Prior to the enactment of AEDPA, rulings on mixed questions of law and fact were subject to de novo review.  Scarpa v. Dubois, 38 F.3d 1, 9 (1st Cir. 1994), cert. denied, 115 S. Ct. 940 (1995).

convincing evidence demonstrating that the findings are unreasonable. 28 U.S.C.A. § 2254(d) and (e) (West Supp. 1997); Drinkard, 97 F.3d at 767-68. A state court's resolution of a mixed question of law and fact will not be deemed unreasonable unless "it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect." Drinkard, 97 F.3d at 769; see also Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir. 1997)(a state court's resolution of a mixed question of law and fact will be upheld as long as it is "minimally consistent with the facts and circumstances of the case"); cf. Lindh v. Murphy, 96 F.3d at 870 (stating that a "responsible, thoughtful answer reached after a full opportunity to litigate" will be deemed reasonable) (en banc).

## III.

Magistrate Judge Muirhead, whom I assigned to review the case, concluded that the trial judge's closure order violated O'Keefe's Sixth Amendment right to a public trial because: (1) the trial judge based the order on an incorrect legal standard; (2) the judge unreasonably concluded that closure was justified to protect the victim; and (3) the judge failed to sufficiently consider alternatives to closure. I examine each

argument in turn, mindful of the limitations that AEDPA places on my power to review the state court's ruling.

## A.   Did the Trial Judge Use the Correct Legal Standard?

A criminal defendant's Sixth Amendment right to a public trial has been described as a "basic protection[]" without which "'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.'" Arizona v. Fulminante, 499 U.S. 279, 310 (1991) (quoting Rose v. Clark, 478 U.S. 570, 577-78 (1986)).  A defendant need not demonstrate that the denial of this right has prejudiced him, or that it affected the outcome of his trial.  Waller v. Georgia, 467 U.S. 39, 49 (1984).  Thus, deprivation of the right to a public trial is not treated as an ordinary trial error subject to harmless-error review.  Fulminante, 499 U.S. at 309-10; Waller, 467 U.S. at 49-50 & n.9 ("While the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance, the Framers plainly thought them nonetheless real."); cf. In re Oliver, 333 U.S. 257, 270 & n.25 (1948) (noting that openness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to perform their duties more conscien-

7

tiously and generally give the public an opportunity to observe the judicial system).

The right to a public trial, despite its fundamental nature, is not absolute. Waller, 467 U.S. at 45. However, blanket statutory closure orders are never permissible. Globe Newspaper Co. v. Superior Court for the County of Norfolk, 457 U.S. 596, 607-10 (1982) (First Amendment right to a public trial). Accordingly, the Supreme Court recognized in Waller that in order to close a courtroom over a defendant's objection,

> "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure."

Waller, 467 U.S. at 48.

Notwithstanding the magistrate judge's contrary conclusion, the record demonstrates that the trial judge understood and correctly applied Waller. Although the trial judge referred in passing to N.H. Rev. Stat. Ann. 632-A:8 (1986), an unconstitutional state statute that improperly required a defendant to establish good cause for keeping a courtroom open during the

8

testimony of a victim under 16 years of age,[4] he acknowledged

that the statute was inapplicable because the victim had recently

turned sixteen.  Further, his discussion of and reliance upon

State v. Guajardo, 135 N.H. 401 (1992), which recognizes that

trial judges must follow Waller, strongly suggests that he had

the correct legal standard in mind when he issued the closure

order.  This suggestion is confirmed by the trial court's

findings which carefully track Waller's requirements.[5]  Thus, the

legal standard on which the trial judge based his closure order

was not contrary to clearly established Supreme Court precedent.

The magistrate judge alternatively contends that the closure

order is invalid even if the trial judge used the correct legal

paradigm because he acted under "an unmistakable misappreciation

of where in the pecking order of competing interests [the

defendant's right to a public trial] lies."  I respectfully

decline to follow this analytical path.  In cases such as these,

where a state court makes a discretionary decision and manifests

---

[4] See State v. Weber, 137 N.H. 193, 197 (1993) (declaring statute unconstitutional).

[5] Waller holds that a defendant need not demonstrate that he was prejudiced by a denial of his right to a public trial. Waller, 467 U.S. at 49.  Although the trial judge also noted that O'Keefe would not be prejudiced by closing the courtroom, his observation does not detract from the fact that he based the order on a careful analysis of the Waller factors.

9

its understanding of the controlling legal standard, AEDPA requires reviewing courts to accept the trial court's decision unless it is unreasonable in light of clearly established Supreme Court precedent. Rather than attempting to look behind the judge's words in an effort to determine the degree to which he understood Waller's requirements, I instead turn to his application of Waller and consider whether it satisfies AEDPA's reasonableness standard. See Hennon, 109 F.3d at 334-35 (rejecting claim that trial judge's decision can be deemed unreasonable under AEDPA because of a "failure of judicial articulateness").

**B.** **Did the Trial Judge Reasonably Conclude that Closure was Necessary to Protect the Victim?**

The United States Supreme Court has recognized that the state's compelling interest in protecting minor victims from physical and psychological harm can justify a closure order in an appropriate case. Globe Newspaper Co., 457 U.S. at 607. Among the factors that must be considered in making this determination are "the minor victim's age, psychological maturity and under-standing, the nature of the crime, the desires of the victim, and the interests of the parents and relatives."[6] Id.

_____

[6] The Supreme Court held in Waller that a closure order cannot issue unless the prosecution establishes an overriding

10

Before the trial judge issued his order, he heard evidence that: (1) the victim would be required to describe how she was raped by the defendant on multiple occasions; (2) the victim had only recently turned sixteen, was immature for her age, and had great difficulty in describing the sexual assaults; (3) both the victim and her mother wanted her to testify in a closed court-room; and (4) the county's victim-witness coordinator, who had helped to prepare over 300 children to testify in court, believed that the victim would suffer increased psychological harm if she were required to testify in open court. This evidence led the trial judge to the conclusion that it would be "devastating" to the victim if she were required to testify in open court. While I might not have reached the same conclusion if I were consider-

---

interest in closure that "is likely to be prejudiced." 467 U.S. at 48. More recently, in an opinion balancing the public's First Amendment right to a public trial and a criminal defendant's Sixth Amendment right to a fair trial, the court held that the right to a public trial cannot give way unless the defendant establishes a "substantial probability" that his right to a fair trial will be prejudiced if closure is not ordered. Press-Enterprise Co. v. Superior Court of California, 478 U.S. 1, 14 (1986). At least one circuit has applied the substantial probability standard to claims based on the Sixth Amendment right to a public trial. Ayala v. Speckard, 89 F.3d 91, 94 (2d Cir. 1996), petition for cert. filed, 65 U.S.L.W. 3632 (U.S. Mar. 7, 1997) (No. 96-1412). In assessing the reasonableness of the trial court's order, I assume that the prosecution must establish a substantial probability of prejudice to justify a closure order.

11

ing the issue <u>de</u> <u>novo</u>, the trial judge obviously was persuaded by this evidence, and I cannot say that his conclusion was so implausible that no reasonable jurist could have reached the same result. Accordingly, I decline to adopt the magistrate judge's conclusion that the trial court acted unreasonably.[7]

## C. <u>Did the Trial Judge Sufficiently Consider Alternatives to Closure?</u>

The trial judge stated in issuing his order that he had considered and rejected alternatives to closure but he did not identify the rejected alternatives. The magistrate judge faults him for failing to properly consider two specific alternatives. The first is that the court could have begun the victim's testimony in an open courtroom, but informed her that she could take a break whenever she wanted. While this alternative would have been more protective of the defendant's right to a public trial, it would not have alleviated the judge's ultimate concern

---

[7] The magistrate judge treated the trial court's finding of an overriding interest justifying closure as a factual finding rather than a mixed finding of law and fact. I would not reach a different conclusion as to the reasonableness of the trial court's finding even if I were to accept the magistrate judge's characterization. AEDPA requires deference to state court findings of fact unless clear and convincing evidence demonstrates that the findings are unreasonable. 28 U.S.C.A. § 2254(d) and (e). Although the trial court's finding certainly is not compelled by the evidence, the record does not clearly and convincingly demonstrate that the finding is unreasonable.

12

that the victim be protected from psychological harm during her testimony.  See Guajardo, 135 N.H. at 405 ("We specifically reject the notion that the trial court must withhold action on a closure request until the victim is on the stand and becomes unable to testify."); State v. Santos, 413 A.2d 58, 63 (R.I. 1980) (noting that "[s]uch a requirement would unnecessarily subject the witness to the sort of emotional trauma that the exclusion of spectators is intended to avoid").  The magistrate judge's second proposed alternative is that the court could have attempted to elicit a guarantee from the reporters present in the courtroom that they would not publish the victim's name.  This suggested alternative likewise fails to address the trial judge's primary concern that the victim would find it traumatic to testify in front of strangers in the courtroom and that the victim's testimony would be adversely affected by leaving the courtroom open.  Thus, neither of the suggested alternatives would have adequately addressed the trial court's concerns.

Even if O'Keefe could belatedly identify a plausible alternative to closure, I would be unlikely to fault the trial court for failing to consider it.  A trial judge cannot be required to identify and discuss on the record every alternative to closure that an inventive petitioner can conceive of after the

13

court has made its decision.  If a defendant does not bring an alternative to the trial court's attention in a timely fashion and the alternative is not so compelling that it would be obvious to a reasonable jurist, the trial judge's failure to expressly reference the alternative in his closure order cannot entitle the petitioner to a new trial.  See Gannett Co. v. DePasquale, 443 U.S. 368, 401 (1979)(Powell, J., concurring) (suggesting that a newspaper objecting to closure bears the burden of suggesting alternate measures); United States v. Raffoul, 826 F.2d 218, 225 (3d Cir. 1987) (holding same); People v. Martinez, 624 N.E.2d 1027, 1031-32 (N.Y. 1993) (holding criminal defendants to the same rule); but see Ayala v. Speckard, 102 F.3d 649, 652-54 (2d Cir. 1996) (court must consider alternatives not raised by defendant), petition for cert. filed, 65 U.S.L.W. 3632 (Mar. 7, 1997) (No. 96-1412).  To conclude otherwise would place an unrealistic burden on trial judges.

## IV.

The right to a public trial is one of the cornerstones of a free society.  However, in most instances, state court judges have the primary responsibility for protecting this precious constitutional right because AEDPA limits the authority of

14

federal courts to second-guess the way in which state courts apply the law to the facts with which they are presented.  Here, the record reveals that the trial judge applied the correct legal standard and made a reasonable choice to close the courtroom during the victim's testimony.  Having reached these conclusions, I proceed no further.

O'Keefe's petition for a writ of habeas corpus is denied.

SO ORDERED.

_____
Paul Barbadoro
United States District Court

April 25, 1997

cc:  Shane O'Keefe, pro se
     John Kissinger, Esq.